## ALABAMA *v.* BURR & Others.

### ORIGINAL.

Argued October 30, 1885.—Decided November 16, 1885.

The State of Alabama loaned its credit to a railroad company by indorsing its bonds. The act authorizing this to be done provided that if fradulent indorsements of bonds should be obtained, or if the bonds should be sold for less than ninety cents on the dollar, then the railroad should be sold, and those stockholders who could not prove either ignorance of the fraud or opposition to it, should be individually liable for the payment of the bonds fraudulently indorsed, and for all other losses that might fall upon the State

by reason of any other frauds committed by the company. The State brought suit at law in this court against certain persons alleged in the declaration to be "the majority and controlling incorporators, officers, directors, and stockholders as well as the actual managers'and controllers" of the company. The declaration alleged that the defendants had (1) made fraudulent misrepresentations by reason of which the indorsement of an over-issue of bonds had been obtained; (2) made fraudulent misrepresentations by reason of which indorsements were obtained before the several sections of the road were fully finished, completed and equipped; and (3) that they had made unlawful and improper use of some of the bonds, or their proceeds, after they got into the hands of the company. On demurrer: *Held,* That the liability of the officers and stockholders to the State was statutory only,'and that the facts stated in the declaration were not such as to bring the defendants within the liability clause in the statute ; (1) because the suit was not brought to recover the payment of bonds the indorsement of which had been frauduently obtained ; and (2) because the declaration did not show that the losses sued for were the immediate consequences of the frauds alleged.

The legislature of Alabama, by a further act, authorized a further loan of its credit to the same company, with provisions that the bonds should not be sold under ninety cents on the dollar, and "that the directors or other officers and incorporators and stockholders" of the company who should violate the provisions of this act, or of the former act above referred to should "be held personally liable to the State for any loss incurred thereby." The declaration alleged that seven hundred and seventy-one of the bonds authorized by the later act were sold at less than ninety cents on the dollar, but it did not state in what respect the State was injured by such sales, nor did it state that the other injuries complained of in the bill and above referred to resulted from acts done after the passage of the last named act. On demurrer: *Held,* That the allegations were insufficient to charge the defendants under the last named act.

It is not decided whether the remedy of the State to enforce the liability of the defendants under these statutes was exclusively in equity.

This was a suit at law brought in this court by the State of Alabama against Isaac T. Burr, Samuel A. Carlton, John DeMerritt, citizens of Massachusetts, John C. Stanton, a citizen New York, and Daniel N. Stanton, a citizen of New Jersey. The declaration stated, in substance, that, under the operation of certain statutes of Alabama, the governor was authorized and required to indorse, on the part of the State, the first mortgage bonds of the Alabama and Chattanooga Railroad Company, a corporation having power to construct a railroad from Meridian, in the State of Mississippi, through the States of Alabama and Georgia to Chattanooga, in the State

of Tennessee, a distance of two hundred and ninety-five miles, to the extent of $16,000 per mile, on the whole length of its road, as fast as sections of twenty continuous miles each were "finished, completed and equipped." The bonds, when issued and indorsed, were to have "priority in favor of the State over any and all other liens whatever." Sections 5 and 6 of an act of February 19, 1867, on which liability of the defendants to a large extent depended, were as follows :

"SEC. 5. *Be it further enacted,* That the bonds before specified shall not be used by said company for any other purpose than the construction and equipment of said road ; and the governor shall not indorse the same unless on the affidavit of the president of said company, and a resolution of a majority of its directory for the time being, that said bonds shall not be used for any other purpose than the construction and equipment of said road, or sold or disposed of for a less sum than ninety cents in the dollar; nor shall said bonds be indorsed until the president and chief engineer of said company shall, upon oath, show that the conditions of this act have been complied with in all respects.

"SEC. 6. *Be it further enacted,* That it shall be the duty of the governor, from time to time, when there shall be reliable information given to him that any railroad company shall have fraudulently obtained the indorsement of its bonds by the governor on the part of the State, or shall have obtained the indorsement contrary to the provisions of this act, or shall have sold or disposed of the bonds indorsed by the governor for a less sum than ninety cents in the dollar, he shall notify the attorney-general of the State, whose duty it shall be forthwith to institute, in the name of the State, a suit in the Circuit or Chancery Court of the county of the place of business of the company, setting forth the facts ; and when the fact shall satisfactorily appear to the court that the indorsement of any of said bonds shall have been fraudulently obtained, or obtained contrary to the true intent, meaning and provisions of this act, or that said bonds shall have been sold or disposed of for a less sum than ninety cents in the dollar, then, and in such case, the court shall order, adjudge and decree that said road

lying in the State, with all the property and assets of said company, or a sufficiency thereof, shall be sold, and the proceeds thereof shall be paid into the treasury of the State; and it shall be the duty of the comptroller immediately to invest the same in State bonds, or the bonds indorsed by the governor, under the provisions of this act creating a sinking fund as provided for in the eleventh section of this act; and said company shall forfeit all rights and privileges under the provisions of this act. And the stockholders thereof shall be individually liable for the payment of the bonds the indorsement of which was so fraudulently obtained by such company, or which were sold or disposed of for less than ninety cents in the dollar, and for all other losses that may fall upon the State in consequence of the commission of any other fraud by such company, excepting such stockholders as may show to the said court that they were ignorant of or opposed the perpetration of such fraud by the company."

By another statute, passed February 11, 1870, the governor was authorized to issue State bonds to the amount of $2,000,-000, and exchange them with the same company for an equal amount of its own bonds, secured by a first mortgage on lands granted to the company by the United States, and certain other specified property, including, if the governor should deem it necessary, a second mortgage on the railroad. The bonds were only to be issued in such sums as it should be shown by sufficient evidence had been expended by the company in the construction and equipment of its road, "in addition to and besides the proceeds of the bonds indorsed by the State which the said railroad company shall have received under the laws of the said State now in force." The act also provided that these bonds should not be sold at less than ninety cents on the dollar, and "that the directors or other officers and incorporators and stockholders of said railroad company, who shall knowingly violate, or permit the violation without objection, of any provision of this act, or of the act under which said company is now receiving the indorsement of the State upon its bonds, of $16,000 per mile, shall be held personally liable to the State for any loss incurred thereby."

The declaration, after setting forth the various statutes relied on, proceeded as follows: "The defendants were at the time last mentioned, and from thence continuously, until, and at and after the time of the occurrence of the several and respective wrongs and injuries and losses to the plaintiff hereinafter stated, the majority and controlling incorporators, officers, directors, and stockholders, as well as the actual managers and controllers of the said Alabama and Chattanooga Railroad Company;" and, after stating that the company issued twelve hundred and fifty thousand of its first mortgage bonds in excess of that authorized by the statutes, avers that such over-issue was made "with the intent fraudulently to procure the indorsement of each of its said bonds by the governor of plaintiff as if the indorsement of each of them by said governor was authorized by said acts, and with intent to deceive the governor of the plaintiff, and to defraud the plaintiff to the extent of an amount equal to so many of said bonds and indorsements thereof as were not authorized by said acts to be indorsed by the governor of plaintiff; and said last-named company, with such fraudulent intent, did, by false and fraudulent representations and pretences, some of which were to the effect that said company was presenting to the governor of plaintiff, for indorsement by him, only so many of its bonds as said acts authorized him to indorse, and was claiming of him indorsement of only so many of its bonds as said acts authorized him to indorse, fraudulently procure from said governor his indorsement of each and all of its bonds issued as aforesaid, and the redelivery to that company of all its said bonds indorsed as aforesaid. In procuring said indorsement by said governor of Alabama of each and of all the said bonds of said last-mentioned company, that company made to said governor the following, among other, false and fraudulent pretences: That this last-mentioned company, at the time it applied for and procured said indorsements, had twenty continuous miles of its railroad finished, equipped, and completed, outside of the State of Alabama, and in the State of Mississippi, and extending in a northeasterly direction towards Alabama; that said last-mentioned company, at the time it applied for and procured said indorsements, had

twenty continuous miles of its railroad finished, equipped, and completed from Chattanooga, in the State of Tennessee, in a southwesterly direction towards Alabama, but outside of Alabama.

"The governor of plaintiff was induced to make said indorsements by believing and acting upon said several false and fraudulent representations and pretences; and otherwise-would not have made any of said indorsements.

"The said representations and pretences were false in the following, among other, respects and particulars:

"First. That said twenty miles of road situate in the State of Mississippi, for which the first indorsement was procured, had not been finished and completed by said company, but was an old road purchased by said company, and which had been built several years prior to the passage of said acts by the said Northeast and Southwest Railroad Company.

"Second. That said road was not equipped.

"Third. That said company had not finished, completed, and equipped twenty continuous miles of said road from said city of Chattanooga, extending towards the State of Alabama, for which it procured the indorsement, by the said State, of the second batch of three hundred and twenty of said bonds, but, on the contrary, said company estimated, as a part of said twenty miles, a part, to wit, five miles of the road of another corporation situated in the State of Tennessee, which was used by it for the running of its train, under an agreement with said other corporation, and which said road has been continuously ever since and is still the property of said other corporation, and for the use of which the said Alabama and Chattanooga Railroad Company was then paying, and continued to pay so long as it controlled and managed its own road, a large rental, amounting to many thousand dollars, which was paid out of the proceeds of the sale of said indorsed bonds.

"Fourth. That said twenty miles of road claimed to have been finished and completed by said Alabama and Chattanooga Railroad Company, from said city of Chattanooga, as aforesaid, at the time it procured said indorsements, had not at that time been equipped."

It was then averred that the $2,000,000 of State bonds were issued to the company under the act of 1870, and that, after this was done, and on or about September 15, 1871, a petition in bankruptcy was filed, under which the company was declared a bankrupt, November 6, 1871, and that, on the 22d of April, 1872, its railroad and property were sold by its assignees to the State, subject to the mortgage given the State to secure the indorsed bonds. Afterwards, the mortgage to the State was foreclosed, and the mortgaged property sold at public auction on the 22d of January, 1877, to a purchaser other than the State.

Then followed this allegation:

"The plaintiff says that in the indorsement and delivery to the said Alabama and Chattanooga Railroad Company of the said bonds of that corporation and the coupons thereunto attached as aforesaid, and in the issuance and delivery to that corporation of the said two thousand bonds of the plaintiff and the coupons thereunto attached as aforesaid, the plaintiff relied on the truthfulness of the several aforesaid false pretences and statements of said Alabama and Chattanooga Railroad Company, as well as on all the provisions of all the said acts of her general assembly, and especially on all the said provisions of said acts relating to the obligation and liability to the plaintiff of the directors, officers, incorporators, and stockholders of said corporation, for any loss that should be incurred by the plaintiff by reason of the directors, officers, incorporators, and stockholders of said corporation knowingly violating, or permitting the violation of, without objection, any provision of the said act approved February 11, 1870, under and by virtue of which the said two thousand bonds of the plaintiff and the coupons thereunto attached were issued and delivered to said corporation as aforesaid, or of the said acts under which the plaintiff indorsed and delivered to the said corporation the said bonds of the said corporation as aforesaid."

It was then averred that, in May, 1869, the company "knowingly, wrongfully, illegally, and fraudulently appropriated to the defendants, and their accomplices in the wrong and fraud," $160,000 of the money accruing from the sale of

the indorsed bonds, and that this sum " was not used or applied in any way for the benefit of said corporation, or of plaintiff, or for the purpose of constructing or equipping its said railroad, or for any honest or lawful purpose." Also, that the company, in or about the month of May, 1869, " wrongfully, illegally, fraudulently, and without any valuable consideration, appropriated and issued to the defendants, and their accomplices in the fraud and wrong, shares of the capital stock of the said corporation of the aggregate par value of four hundred and fifty thousand dollars, which the defendants thereafter pretended to sell to said corporation, and in payment therefor the said corporation fraudulently and illegally paid to the defendants, and the defendants did wrongfully, fraudulently and illegally receive from the said corporation a large sum, to wit, the sum of forty-five thousand dollars, which said sum had accrued to, and been received by, the said corporation from the sales of a portion of said bonds, indorsed by the plaintiff, and delivered to the said corporation as aforesaid, and which said sum, received by the defendants as aforesaid, they, the defendants, knowingly, wrongfully, illegally, and fraudulently appropriated to their own use and benefit, and which was not used or applied in any way for the benefit of said corporation, or for the purpose of constructing or equipping its said railroad."

Also, that in the months of November and December, 1869, the company " wrongfully, illegally, fraudulently and knowingly permitted the defendants to appropriate to their own use and to the use of their accomplices " certain sums amounting in the aggregate to one hundred and eighteen thousand dollars, " which sums had accrued to, and been received by, the said corporation from sales of a portion of said bonds indorsed by the plaintiff and delivered to said corporation as aforesaid, and which were not used or applied in any way for the benefit of said corporation, or for the purpose of constructing or equipping its said road." Also, that in the months of January and February, 1870, the company " knowingly, wrongfully, illegally and fraudulently permitted the defendants to misapply, misappropriate and convert to improper uses a further large sum, to wit, four hundred thousand dollars, which had accrued to and

been received from the sales of a portion of said indorsed bonds, . . . and which was never used or applied in any way for the benefit of said . . . corporation, or for the purpose of constructing, equipping, or finishing its said railroad, or for any other purpose authorized by said acts of the legislature."

Also, that the company, " with the knowledge and participation of the defendants, during the years 1869 and 1870, wrongfully and illegally sold and disposed of" eight hundred and twelve thousand dollars of the indorsed bonds, and seven hundred and seventy-one thousand dollars of the State bonds, at less than ninety cents on the dollar; and that five hundred and eighty thousand dollars of the indorsed bonds were disposed of by the company, with the knowledge and permission of the defendants, by placing them as collateral security for the debts of the company which debts were much less than ninety per cent. of the amount of the bonds.

It was then alleged that the company, with the permission of the defendants, during the years 1869 and 1870, "allowed large amounts of said indorsed bonds, to wit, two hundred thousand dollars, as well as large sums of the proceeds of said indorsed bonds, to wit, one hundred and fifty thousand dollars, to be unlawfully paid or given to various persons who were not entitled to any part of said bonds or the proceeds thereof, and were at the time of such payments or gifts known by said last named corporation, as well as by said defendants, not to be entitled to any part of said bonds or the proceeds thereof; . . . and the indorsed bonds and proceeds of said indorsed bonds which were so unlawfully paid or given by said . . . corporation were never used or applied in any way for the benefit of that corporation, or for the construction or equipment of its said railroad, or for any honest and lawful purpose, but were lost to that corporation."

It was then alleged that the company, during the years 1869 and 1870, permitted the defendants to use two hundred thousand of the indorsed bonds in purchasing for themselves stock in the Roane Iron Company and in the Vicksburg and Meridian Railroad Company, and in opening and working a coal

mine, and that these bonds were wholly lost to the company and to the plaintiff, and were never applied in any way to its benefit, or to the construction or equipment of its road.

As an excuse for not making the " allegations as to said wrongful, illegal and fraudulent acts of said company more full, certain or definite," it was stated that the company, with the participation and concurrence of the defendants, "fraudulently concealed from plaintiff all knowledge or information touching each of the aforesaid wrongful or fraudulent acts of said company and of said defendants, and wilfully kept the plaintiff ignorant of each of said wrongful and illegal acts."

The declaration concluded as follows : "And the plaintiff says that by reason of the aforesaid wrongful, illegal and fraudulent acts of the said Alabama and Chattanooga Railroad Company, permitted and participated in by the defendants, who were the actual managers and controllers of said Alabama and Chattanooga Railroad Company as aforesaid, the said corporation last named became a bankrupt in the year 1871, and was rendered wholly unable to pay its indebtedness existing on and prior to the first day of September, 1871, and especially the interest on said indorsed bonds," which became due on the first days of January and July A.D. 1871, and that on the State bonds, which became due on the first days of March and September in the same year, amounting in the aggregate to five hundred and thirty-seven thousand six hundred dollars, all of which " the plaintiff was compelled to pay and did pay to the holders of said bonds, which she would not have been compelled to pay but for the wrongful, illegal and fraudulent acts of the said defendants and said corporation as aforesaid, no part of which sum of five hundred and thirty-seven thousand and six hundred dollars has ever been repaid to the plaintiff ; and by reason of the aforesaid wrongful, illegal and fraudulent acts of the said Alabama and Chattanooga Railroad Company and of the said defendants as aforesaid, the said plaintiff has been further dampified and injured to the additional extent of one million of dollars in settling her liability created and evidenced by her aforesaid indorsement of said indorsed bonds, no part of any of which loss or damage has ever been paid to the plain-

tiff. And the plaintiff says that she had no notice, information or knowledge of the wrongful, illegal and fraudulent acts of the said defendants and said corporation as aforesaid, until within the twelve months now last past. Whereby, and by force of the said acts of the general assembly of the plaintiff, approved February 19, 1867, September 22, 1868, November 17, 1868, February 11, 1870, respectively, an action hath accrued to the plaintiff to recover against the said defendants full compensation for the aforesaid respective losses and damages to plaintiff sustained as aforesaid, yet the said defendants, although requested so to do, have not, nor hath either or any of them, at any time hitherto, yielded any compensation, or made any satisfaction or amends, to the plaintiff for the said loss so by the plaintiff sustained as aforesaid, but to do this the said defendants have hitherto altogether neglected and refused, and still do refuse, to the damage of the plaintiff, the sum of three million dollars."

To this declaration the defendants demurred generally.

*Mr. W. Hallett Phillips* argued in support of the demurrer on behalf of defendants John C. Stanton, Daniel N. Stanton, and John DeMerritt.

*Mr. H. G. Nichols* and *Mr. B. F. Brooks* argued in like manner on behalf of defendant Burr.

*Mr. H. C. Tompkins* and *Mr. Samuel F. Rice* [*Mr. E. S. Mansfield* was with them on the brief] opposing, argued questions of jurisdiction, and non-joinder of parties, raised by the demurrers, and also as follows: 

The declaration is in case. There is no necessity for setting forth successive counts. It would be impossible and not in accordance with the facts, admitted by the demurrers to be true, so far as they are well pleaded, to have separate counts set forth the statutory provisions relied upon, and aver one particular trespass or one violation of the obligations imposed upon and accepted by the defendants, and conclude that such single trespass, or such particular act in violation of their obligations, caused the loss for which the State seeks redress. It

appears from the declaration that it was the various acts (and
not one particular act) of the defendants, as therein specified
(and with all the particularity of specification at the command
of the plaintiff), in violation of the obligations imposed upon
and accepted by them, that caused the company to become
bankrupt, its property and franchise to be sold, its inability to
pay the $537,600 interest on the indorsed and State bonds, and
the payment of that precise sum by the State. . *Bond* v. *Appleton,* 8 Mass. 472. In that case the declaration was in case.
By an act of the State of New Hampshire creating a banking
corporation, it was provided that if the corporation should refuse or neglect to pay their bills on demand, the original stockholders, their successors, assigns and the members of the corporation in their private capacities, should be liable to the
holder. *Myers* v. *Gilbert,* 18 Ala. 467.

Where, from a given state of facts, the law raises a legal
obligation to do a particular act, and there is a breach of that
obligation, and a consequential damage, an action on the case
is the proper form of action, in which the plaintiff in his declaration states the facts out of which the legal obligation arises,
the obligation itself, the breach of it, and the damage resulting
from that breach; for that is the most accurate description of
the real cause of action; and that form of action in which the
real cause of action is most accurately described is the best
adapted to every case. *Burnett* v. *Lynch,* 5 B. & C. 589; 1
Saunders on Pl. & Ev. 715; 1 Chit. Pl. 123; *Dickson* v. *Clifton,* 2 Wilson, 319; *Bretherton* v. *Wood,* 3 B. & B. 54; *Mast*
v. *Goodson,* 3 Wilson, 348; *Ansell* v. *Waterhouse,* 2 Chitty, 1.

"A breach of duty in the defendant, and a damage resulting
therefrom to the plaintiffs, is a proper subject for an action on
the case in tort." Littledale, J., in *Burnett* v. *Lynch,* above
cited.

Mr. Chief Justice Waite delivered the opinion of the court.
After stating the facts in the language above reported, he continued:

The demurrer presents the question whether the facts stated
in the declaration are sufficient to support the action. The lia-

bility of the officers and stockholders of the company to the State is statutory only, and there can be no recovery unless the facts stated in the declaration are such as to bring the defendants within the operation of the liability clause in one or the other of the statutes.

1. As to the act of 1867.

Under this act, guilty stockholders are made liable, 1, for the payment of all bonds, the indorsement of which was fraudulently obtained by the company, or which were sold at less than ninety cents on the dollar; and, 2, for all *other* losses that fell on the State in consequence of any *other* fraud of the company. For frauds in obtaining indorsements the obligation is to pay the bonds indorsed; for all *other* frauds, to pay the losses of the State in consequence thereof.

This suit is not brought to enforce a liability of the defendants for the payment of the bonds. That was conceded in argument. With the alleged frauds in obtaining indorsements, therefore, we have nothing to do, because the liability of stockholders for the payment of *losses* depends entirely on other frauds than these.

The office of a declaration is, to state the essential facts on which the liability of the defendant in the action depends. In this case, it must show, 1, the particular fraud of which the company has been guilty; and, 2, that the loss which has fallen on the State resulted directly therefrom. The frauds alleged are, 1, misrepresentations, by reason of which the indorsement of an over-issue of bonds was obtained; 2, misrepresentations, by reason of which indorsements were obtained before the several sections of the road were fully "finished, completed and equipped;" and, 3, the unlawful and improper use of some of the bonds, or their proceeds, after they got into the hands of the company.

As to the first and second of these classes of allegations, it is sufficient to say that they relate only to the manner in which the indorsements were obtained, and for frauds of that character the liability is, as has been seen, only for the payment of the bonds the indorsement of which was got in that way. The other allegations are in effect that, at different

times, the company used indorsed bonds, or their proceeds, for dishonest purposes, and paid them out without consideration and in fraud of the rights of innocent stockholders. In some instances, they were given to the defendants without consideration, or for an unauthorized purpose, and in others to other persons who were not entitled to them. If the averments are true, they show gross frauds by the company and the defendants, as its officers and agents, upon innocent stockholders, but they fail entirely to connect the losses which have since fallen on the State with what was thus wrongfully done. Upon such allegations, if proven, the company might, perhaps, recover from the defendants and others the bonds and moneys they had fraudulently obtained, but it by no means follows that the State has, also, a right of action against the defendants on the same grounds.

The declaration does indeed allege that, "by reason of the aforesaid wrongful, illegal and fraudulent acts of the said . . . company, permitted and participated in by the defendants," the corporation became bankrupt and was rendered wholly unable to pay its debts, and especially the interest on its bonds; and that the State had been compelled to make certain payments on that account "which she would not have been compelled to pay but for the wrongful, illegal and fraudulent acts of the defendants and said corporation;" and that, "by reason of the aforesaid wrongful, illegal and fraudulent acts of the said . . . company and of the defendants, the said plaintiff has been further damnified and injured to the additional extent of one million of dollars in settling her liability created and evidenced by her aforesaid indorsement of said indorsed bonds;" but this is not enough, unless the facts from which this conclusion is drawn are such as to show that the loss was both the natural and immediate consequence of the wrongful and fraudulent acts referred to. Pleadings must state facts, and not conclusions of law merely, and the allegation in this case that the loss arose from the fraud is only a conclusion of law. If the facts from which the conclusion is drawn are not sufficient to show that in law the loss was attributable to the fraud, the declaration is bad.

The facts are, that the State was to indorse certain bonds of the company upon certain security. It made the indorsement and got the security. The obligation of the company to use the bonds to build and equip the road was satisfied, if the road was actually completed and equipped in accordance with the requirements of the statute at a *bona fide* cost to the company of more than the amount of the bonds. The object of this requirement was to insure the creation of the security which the State was entitled to have. If the security was actually perfected, all claim of the State upon the indorsed bonds was satisfied. There is no pretence that the road cost less than the value of the bonds. Consequently, if the bonds were not used to build the road, other funds belonging to the company must have been, and it was proper to treat the bonds as a substitute for the other funds in the treasury of the company. This being so, it was not a fraud on the State for the company to do with the bonds as it might have done with the other funds, if they had not been used in building the road. As the State had no direct lien on the bonds for its security, a fraudulent use of the bonds was not a fraudulent diversion of the State's securities.

The loss of the State is directly attributable to the deficiency in the value of its original security, and the fraudulent use of the bonds had no effect on that. The company, if the allegations are true, has wasted its property and made itself insolvent, but it has not in this way increased its obligations to, or changed its relations with, the State. Both the debt to and the security held by the State were the same after the frauds as before. The injury to innocent stockholders by the wrongful acts of the company and the defendants was direct and immediate, because their property was taken and fraudulently converted to the use of the defendants or the other wrongdoers. To the State, however, the injury, if any, was both indirect and remote, because the State had no direct claim upon, or interest in, the property which was misappropriated. The law will not imply that, if the company had kept the bonds, the same loss would not have fallen on the State. There was no imperative obligation on the company to use the bonds to

pay the debts for which the State was liable rather than others, and, consequently, it cannot be said that, as a matter of law, if the misappropriations had not been made, the State would have suffered no loss. To our minds it is clear, therefore, that, upon the facts as they are set forth in the declaration, there is no liability on the part of the defendants for the alleged frauds of the company, other than those connected with over-issues, or sales of the bonds at less than ninety cents on the dollar, and for these the suit is not brought.

2. As to the act of 1870.

Under this act all officers and stockholders who knowingly violate or permit without objection the violation of any of its provisions, or the provisions of the act of 1867, are made personally liable to the State for any loss incurred thereby. There is also a prohibition against a sale of the State bonds, the issue of which to the company was authorized, at less than ninety cents on the dollar; but there is no provision for the liability of the stockholders for the payment of the bonds, in case they are so sold, as there is in the act of 1867. The only liability under this act, for such a violation of its provisions, is for the losses which the State sustains on that account. The declaration alleges that seven hundred and seventy-one of these bonds were sold at less than ninety cents on the dollar, but it fails entirely to show how the State was injured thereby. Stockholders are liable under this act for violations of the act of 1867, only when such violations occur after this act took effect, which was February 11, 1870, and it nowhere affirmatively appears that any of the wrongs complained of were committed after that date, except in the sale of the State bonds at less than ninety cents on the dollar. It is also as much incumbent on the State to show, under this act, that the losses for which it seeks to recover were the direct and immediate consequence of the wrongful conduct complained of, as it was under the act of 1867. What has been said, therefore, as to the insufficiency of the allegations to charge the defendants under that act, is equally applicable to this.

It was contended in argument that the remedy of the State to enforce the liability of the defendants under the statute was

exclusively in equity. This question we do not decide, as there is not entire unanimity of opinion amongst us in reference to it. There were other objections to the declaration also mentioned in the argument, but we deem it unnecessary to refer to them, as what has already been said is sufficient to dispose of the case. Being unanimously of opinion that the facts stated in the declaration are not sufficient to constitute a cause of action against the defendants,

*We sustain the demurrer.*