**LOUISVILLE TRUST CO. v. NATIONAL BANK OF KENTUCKY et al.**

No. 7714.

Circuit Court of Appeals, Sixth Circuit.

March 13, 1939.

138

Squire R. Ogden, of Louisville, Ky. (Robert G. Gordon, Squire R. Ogden, and Gordon, Laurent, Ogden & Galphin, all·of Louisville, Ky., on the brief), for appellant.

Robert S. Marx, of Cincinnati, Ohio (Edward P. Humphrey, of Louisville, Ky., and Nichols, Wood, Marx & Ginter, of Cincinnati, Ohio, on the brief), for appellees.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The controversy originally initiated by bill in equity to recover the purchase price of a bank building in Louisville claimed to have been sold by the trust company to the bank under an oral contract subsequently made enforceable by memoranda evidencing the agreement is for the second time before the court, this time on an appeal from a judgment at law against the trust company upon the direction of a verdict for the bank.

When the case was here before the trust company had a decree for the payment of the purchase price, a lien on the building, and a mandate for its foreclosure to se-cure the payment of its claim. The bank being insolvent and in process of liquidation under the direction of the Comptroller of the Currency, we concluded that an action for specific performance would not lie against either the bank or its receiver. The contract being wholly executory, the receiver had the right to repudiate it, and the granting of relief in the nature of specific performance was held to be the equivalent of full satisfaction of the plaintiff's claim and so to constitute a preference to which it was·not entitled. Since examination of the relief granted by the decree demonstrated it to be equivalent to a decree for specific performance, we reversed. National Bank of Kentucky v. Louisville Trust Co., 6 Cir., 67 F.2d 97. A petition for writ of certiorari was denied by the Supreme Court. 291 U.S. 665, 54 S.Ct. 440, 78 L.Ed. 1056. Upon the assumption that upon remand the cause would be transferred to the law side of the court for trial, with appropriate amendments to the pleadings, we expressed our views upon a number of questions involved and defined the issues of fact to be determined in the suit at law.

The facts that form the basis of the trust company·claim are fully developed in our former opinion. Repetition in detail being unnecessary, a brief summary will suffice. In 1929 it was proposed to merge the Louisville National Bank & Trust Company with the Louisville Trust Company. The former owned a new bank building at 421 West Market Street, Louisville, which is the subject of the contract here involved. The latter likewise owned a banking and office building, but in 1927 it had been "unified" with the National Bank of Kentucky, which owned no banking quarters. It was agreed between officers of·the trust company and the bank to recommend to their respective boards that the bank purchase the property at West Market Street at its cost or book value of $857,096.50. The minutes of the bank note an offer by the trust company and acceptance by the bank. There are no trust company minutes authorizing the offer. There was no other writing evidencing the contract until January, 1930, when, after a joint meeting of the directors of the bank and trust company with the directors of Banco-Kentucky, a holding company owning substantially all of the bank's capital stock, there was recorded in the minutes of the trust company the fact that the joint meeting had

decided that the bank would take over the building at 421 West Market Street from the trust company as previously agreed by their respective boards. On August 25, 1930, the president of the trust company advised the bank by letter that the Market Street building would be ready for occupancy by it on the first of October, and on September 22, 1930, sent the bank a bill for the purchase price, and later other communications showing how the purchase price was arrived at and submitting title papers and other data. To none of these communications did the bank make written or formal reply. In 1930 the trust company moved from the Market Street location, the bank took possession of the safety deposit vaults, but not of the rest of the building, and title was never transferred. On November 17, 1930, the trust company and the bank both closed their doors, the trust company to be reorganized and the bank to be liquidated. Upon these facts the court below directed a verdict for the defendant on the ground that there was no substantial proof that the memorandum of sale was ever accepted by the bank under applicable Kentucky law.

The judgment is assailed on two main grounds. The peremptory instruction is said to be in violation of a mandate of this court to submit the issues defined in our former opinion to the verdict of a jury, and the second ground is that, even if not precluded by our mandate the court should have submitted the issue because of substantial evidence of acceptance of the writing evidencing the contract. Collaterally, it is urged, that if our former opinion does not in all respects state the law of the case, we should upon the present argument reinstate the original decree.

The record in the present proceeding is said to be substantially identical with that in the first. In this situation we conceive our former opinion to state the law of the case in respect to all issues there unequivocally decided. E. E. Taenzer & Co. v. Chicago, R. I. & P. Ry. Co., 6 Cir., 191 F. 543; Messinger v. Anderson, 6 Cir., 171 F. 785, 790. Whatever may be our power to reopen what has already been decided (Messinger v. Anderson, 225 U.S. 436, 32 S.Ct. 739, 56 L.Ed. 1152), that power may not rightly be exercised except in a very clear case. Williams v. Order of Commercial Travelers, 6 Cir., 41 F.2d 745; Carpenter v. Durrell, 6 Cir., 90 F.2d 57.

Not only does the present record fail to disclose such case, but a second consideration of the equity case fails to suggest error in our former decision.

We consider then our mandate. The equity decree was set aside and the cause remanded for further proceedings consistent with our opinion. We did not direct a jury trial nor any trial. Manifestly we could not deprive the parties of their statutory right to waive a jury, and to submit their controversy to the court. It is equally clear that we could not relieve the District Judge of his primary responsibility to pass upon the substantial character of the plaintiff's evidence, Patton v. Texas & Pacific R. R., 179 U.S. 658, 660, 21 S. Ct. 275, 45 L.Ed. 361, and that we should not deprive ourselves in the event of a second appeal of the judgment of the trial court thereon in view of its superior opportunity for ascertaining the truth. Nor could we predetermine the quality of the evidence. Witnesses may have been produced at the first trial who were no longer available. New evidence may have been discovered. Memories fail and are refreshed. Contentions seemingly important at one time are of little moment at another, and those at first weakly urged are later given new emphasis. Upon our mere suggestion that, should there be a conflict of evidence in the event of a retrial at law the question of the existence or non-existence of a valid and binding contract should be submitted to and determined by a jury under proper instruction, it is idle to contend that we either commanded or intended to command the District Court to submit such issue to a jury under all circumstances. It is clear that what was said in that connection was for the purpose of showing that decision was not foreclosed one way or the other, and was not then for us to make. The District Judge was not precluded by anything in the mandate or the opinion from giving peremptory instructions to the jury, if in his judgment the evidence failed to raise a controlling question of fact.

In our former opinion, 6 Cir., 67 F. 2d 97, we reviewed the decisions of the Court of Appeals of Kentucky and concluded that the law of Kentucky, differing from that of other jurisdictions, permits a contract for the sale of real estate to be proved if it is evidenced by writings substantially embodying its terms and signed only

by the vendor, but in order to insure that the agreement possesses mutuality, the rule is subject to the qualification that the memorandum must be delivered to and accepted by the vendee before the contract becomes enforceable by either party. Murray v. Pate, 6 Dana 335; Gorman v. Gorman, 210 Ky. 65, 275 S.W. 366; Duteil v. Mullens, 192 Ky. 616, 234 S.W. 192, 20 A.L.R. 361. There is no necessity that the making of the note or written memorandum should be contemporaneous with the making of the parol agreement, but if it is not contemporaneous there must be evidence of a continuance of the defendant's acquiescence in it and some act upon his part evidencing continued assent. We said, "Should the case be retried upon the law side of the court below, therefore, we think that one of the issues of fact to be decided in the case will be whether, if the making of an otherwise valid parol agreement be shown, there was such delivery to and acceptance of the memoranda by the vendee as evidenced an intent upon the part of both the contracting parties to validate or make enforceable the original agreement by reducing its terms to written form". [67 F.2d 105.]

While it had been argued on the equity appeal that a new contract as of January 13, 1930, might not be valid, we saw no reason why the parties could not make a parol contract of June 21, 1929, valid and enforceable by mutually agreeing to that reduction to writing which would satisfy the Statute of Frauds, Ky.St. § 470. Whether this was done would be a question of fact upon which we expressed no opinion. We concluded that, if the memorandum were otherwise sufficient and as such was delivered to and accepted by the vendee, the contract might well be construed as a sale for cash of such title as was acquired by the trust company and that the memorandum would not be held insufficient alone for failure to expressly state these facts, provided always that a parol contract to this effect was found to have been made which was not invalidated by the failure of the parties to agree upon any other essential provision.

In the effort of the District Judge precisely to apply our mandate he concluded that there had been a valid parol contract entered into on January 13, 1930, that written memoranda, including minutes of the bank and trust company and letters of the trust company to the bank, constituted, if acceptance were proved, substantial record evidence of that asserted fact for submission of it to the jury, that there was credible testimony that the offer made by the trust company was authorized by its Board of Directors, and that the writings sufficiently indicated the terms of the agreement. Upon these conclusions there is no complaint. The court was unable, however, to find in the record substantial evidence of the acceptance of any memorandum in writing to satisfy the Kentucky Statute of Frauds as a confirmation of the parol agreement of June 21st, and it is the soundness of its conclusion in this respect that is the remaining question in the case, and to which we address ourselves.

While the minutes of the trust company recording the joint meeting of its board with that of the bank on January 13, 1930, may be evidence of continuing acquiescence by the bank in the parol agreement of June 21, 1929, there is no evidence that such minutes were signed by anyone authorized to represent the trust company or that a copy thereof was ever delivered to or accepted by the bank. Nor does the statement alleged to have been published on February 8, 1930, in the Louisville Herald-Post, to the effect that the bank would have a new home at 421 Market Street, comply with the requirement of a writing signed by the vendor or of consent by the vendee. There remain the letters of the trust company president to the president of the bank in August and October, 1930. Assuming that, read together, they constitute a memorandum sufficiently stating the terms of the parol agreement signed by the vendor, and that they were delivered to the bank, we are confronted with the question whether the record shows their acceptance as such memorandum by some unequivocal act on the part of authorized officers of the bank. There was no written reply to the communications. There was evidence that the cashier of the bank and one of its many vice-presidents informed the trust company that the transaction would be concluded and a check delivered. If their oral communications satisfy the mutuality requirements of Kentucky law, there is no evidence that they were authorized by the bank. We treat as elementary the proposition that administrative officers, whatever be their authority to bind the bank in the ordinary course of business, have no power in the absence of specific authorization to bind the bank in the purchase of an expensive office building.

The main reliance of the trust company in its affirmation of acceptance is upon what happened in respect to the Market Street property in October. The trust company had advised the bank that the building would be ready for occupancy on the 1st. On the 14th the bank employed and paid a superintendent of vaults and his assistants, night men and elevator men. The vault keeper had printed the name of the bank upon receipts for lock boxes, and rentals from such boxes were paid after October 14th to the bank. The bank changed its telephone number to the new address and made a contract with the gas company for steam heat. The directors of the bank held a meeting in the board room of the Market Street building. This latter circumstance perhaps loses significance when it is understood that meetings had been held there repeatedly during the occupancy of the trust company. Whether the remaining circumstances sufficiently indicate an acceptance of the written memoranda requires consideration of the status of the affairs of the bank at the time.

We noted in our former opinion that the bank in January held between four and eight million dollars of sub-standard assets. The stock market had crashed many months before, and the value of securities had shrunk, in some cases disappearing altogether. The bank was hopelessly insolvent in October, and on November 16th was in the hands of a receiver. To the date of trial depositors had been paid but 67% of their claims. In the former case we concluded that if the making of the contract was held to have taken place on January 13, 1930, it would have been unconscionable and unfair since no contract which contemplated so large a frozen investment could have been then regarded as in the interest of a purchaser so circumstanced as was the bank. It was fair inference that from January to October the affairs of the bank grew steadily worse. In this situation it was the view of the District Judge that acceptance by the bank to make binding an unenforceable parol agreement concluded fourteen months earlier involving the expenditure of more than $850,000 in cash at a time when the bank was in dire need of liquid assets, could not reasonably be inferred except through acts clearly manifesting deliberate intent, and that in the absence of clear and convincing demonstration of acceptance decision must be based upon mere conjecture. Finding no proof of acceptance of the character indicated, he directed a verdict for the bank and its receiver.

We find no error in this determination. The Kentucky requirement of mutuality in an enforceable contract for the sale of real estate is not less rigid than that of other states when it is considered that unequivocal acceptance and consent to a written memorandum signed only by the seller takes the place of the signature which in other jurisdictions is required of the party to be charged before such contract may be enforced against him. Upon the former record it did not appear to us that any part of the building other than the safe deposit vaults had been taken possession of by the bank. The District Judge concluded that no sufficient dominion had been exercised by the bank over the entire building to constitute a taking of possession, and likewise noted, as do we, that the acts done in this respect might just as reasonably be attributed, under circumstances then existing, to motives and intent other than confirmation of a real estate purchase involving an immediate expenditure of $850,000 and more in cash.

The judgment below is affirmed.