155       523
25 SC 460

## Bierer et al., Appellants, v. Hurst.

*Damages—Waters—Diversion of stream.*

In an action of trespass for injuries alleged to have been caused by the obstruction of a natural water course so that water was backed upon the land of plaintiff, the case is for the jury, if the evidence is conflicting as to whether the alleged obstruction by the defendant caused the injuries complained of.

If a landowner keeps and maintains the channel of a stream and culvert on his land in a condition to carry off safely the ordinary flow of water in ordinary freshets, he will not be responsible for any increased flow of water on an upper riparian owner's land, caused by the act of any lower riparian owner in obstructing the channel.

Argued May 8, 1893. Appeal, No. 246, Jan. T., 1893, by plaintiff, Catharine E. Bierer et al., from judgment of C. P. Fayette Co., Sept. T., 1889, No. 105, on verdict for defendant, Isaac Hurst et al. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and THOMPSON, JJ.

Trespass to recover damages for injuries caused by obstruction of natural water course.

At the trial, before Ewing, J., it appeared that a stream of water running into Uniontown was carried across Mt. Vernon street by a culvert. In 1883 or 1884, Joseph Strickler, whose lands adjoined Mt. Vernon street, continued the culvert across his lot up to the line of defendant's land. Defendants then continued the culvert across their property up to a point near plaintiff's land. There was evidence that in 1887 a natural gas company laid its pipe along Mt. Vernon street and through the upper part of the culvert, diminishing its carrying capacity nearly one third. During the years 1887 and 1888, the injuries complained of were caused by the waters backing up on plaintiff's land. Defendants' evidence showed that during these years there were extraordinarily heavy freshets.

When J. L. Malcolm was on the stand, he was asked:

" Q. If the Hurst culvert caused all the overflow that you saw there, what damage was it to the Bierer property ? " Mr. Boyd: Defendant objects that the witness hasn't said that the overflow was all caused by the Hurst culvert. Mr. Campbell: Well, I propose to ask the witness that question. Mr. Boyd: I object, because it has already appeared from the evidence and from the testimony of this witness, that all the overflow was not on the Hurst land, but was partly on Bierer's own land above. Objection sustained and exceptions. [8]

" Q. Mr. Malcolm, what damage to the Bierer land was the overflow that you saw there ? " Mr. Boyd : Well, I object, unless it was from the overflow caused by the Hurst culvert, it already appearing from the testimony of the witness that he saw the land overflowed from other causes there. The Court : The witness having stated that the overflow that he saw was not all caused and couldn't say what part of it was caused by the culvert in question, the objection is sustained and bill sealed. [9]

" Q. Mr. Malcolm, was the overflow of the water which you saw there on to the Bierer land any damage to the Bierer land ? " Mr. Boyd : I object. If the question is confined to the over- flow caused by the construction of the Hurst culvert, there is no objection, but if it refers to the damage of another overflow there, why there we object that it is not competent. Mr. Camp-

bell : Well, I don't know now what position the counsel takes: The Court: Well, he takes the position that you can't show damage that was not caused by the Hurst culvert. Mr. Campbell: Well, does he object to that question ? Mr. Boyd : Certainly. Mr. Campbell: Very well. Objection sustained, unless the witness can state that the damage was caused by this sewer. Exception. [10]

The court charged in part as follows :

" In this case the plaintiffs say that prior to 1885 they had no trouble with the water coming from their land as they have had since, although they admit that prior to that time as well as subsequently, perhaps, their land has been at times subject to overflow by reason of unusual rainfalls and consequent extraordinary volume of water coming down that stream and breaking over the banks of the stream on their own property, as well as above, sometimes breaking over above at the McClellandtown road and running down over their land. But they say that since that time, 1885, prior to which time, a few years, the defendants obtained a lot of land adjoining the plaintiffs' property, that they have been troubled by the water running on to their land from the defendants.

" You will remember that the defendants' land is lower on the stream than that of the plaintiffs, and they say that, since the period that I have mentioned, the water has run along the land of the defendants in the neighborhood of the line between the plaintiffs and defendants for some distance, and then across from the defendants' land on to that of the plaintiffs, traversed their land for some little distance, covering, as Mr. Bierer testifies, a spot of from a quarter to half an acre, and then passing off of their land on to the land of Mr. Thompson and then others, perhaps, until it gets to Mt. Vernon avenue and finds its way into the creek ; and they say that this has been caused by obstructions placed by the defendants in that stream, and they have spoken particularly about two kinds of obstructions. They say, in the first place, that the defendants placed boards there in the line fence, or in the opening of the sewer that he had constructed there, in such a way as to dam up the water and throw it off of their premises on to the premises of the plaintiffs, and that they had constructed a sewer over the defendants' lot which was insufficient to carry off the volume of

water in that stream in the ordinary and usual stages. And when I speak of ordinary and usual stages, you will remember that I mean, not only in dry seasons, but the ordinary and usual freshets to which that stream is subject. They say that by reason of this they have been damaged ; that their sod has been washed and that they have been unable to have the use of the pasture that they would otherwise have, because of its being covered with this water; and further that at one time their fence was washed away, and for that, also, they ask you to give them damages.

" [You will have to go over the testimony, gentlemen of the jury, and ascertain whether or not these obstructions or either of them were or was placed in that stream by the defendants, and whether by reason of that obstruction the water from this stream was thrown upon the land of the plaintiffs, and, if so, what damage it did.] [1]

" If the water was thrown upon their land by reason of the obstructions placed there by the defendants, the plaintiffs would be entitled to recover at least nominal damages ; and if they have proven any actual damages done to their land by reason of the overflow, they would be entitled to compensation for that damage, whatever it would be, and Mr. Bierer says the fence cost ten dollars once when it was washed away, and that at another time it required two hands half a day to repair it; that they lost the use of the pasture on that land which occasioned them loss in addition to the fence matter. Now he places an estimate on that of from three to five hundred dollars, I believe. Another witness, Mr. Duer, although not seeing the water, perhaps, at the time it was flowing over the land, says that he visited the place and saw where the water had been, and that it came from Hurst on to the plaintiffs' land, and then off on to Thompson's and away ; and he says, if that had occurred frequently, he would think the damage would be from two to three hundred dollars, I believe, but he didn't know how often it had occurred or what the damage was.

" [Now, on the part of the defendants, they contend in the first place that they placed no obstructions in this stream. Mr. Hurst testifies that as far as the boards placed at the end of the sewer are concerned, he never placed any boards there but once, but did once after the plaintiffs had built up the

banks of the stream on their land in such a way as to cause it to contain such an unusual amount of water and discharge it on his land in times of extensive rains, that he did put boards up there to keep that water off of his land; that he did build this sewer, but that he built it large enough to carry off all the water from that stream in the stages that I have spoken of— usual stages—and that any loss that has been occasioned by damage done to the plaintiffs, by reason of water flowing from his land on to their property, has been occasioned by no obstructions placed there by him, but by obstructions placed below him by some lower riparian owner and for which he would not be responsible;] [2] and he has called your attention, not only to the dimensions of the sewer on his own property, but on that of Mr. Strickler, and also of the one that crosses Mt. Vernon avenue. He has also called your attention to a barrel which has been placed along his sewer somewhere about the middle of it as I recall it—perhaps not so far down as the middle of his lot—right on top of the sewer, and in which he and other witnesses have testified that they have seen the water rise to within six or eight inches of the top of the barrel, fully as high as the water was at the point where it entered the sewer at the Bierer line; and from the testimony in regard to the size of the sewer on his property and others below him, and the height of the water in this barrel, [they ask you to find that the obstruction isn't upon his property, but below, and that the damage if any is not occasioned by any obstruction placed by him in that stream, but by somebody below him obstructing the stream to such an extent that it backed the water up, not only upon him, but upon Mr. Bierer as well.] [3]

" [Now those are the main questions, and it will be for you to determine whether or not, either by the obstruction of boards or the construction of this sewer, the water of this stream has been backed up and thrown upon the land of the plaintiff by the defendant; and, if so, then the plaintiffs are entitled to recover such an amount of damages as they have shown by the testimony they have sustained.] [4]

" [If, on the other hand, this water has been backed up and thrown upon the plaintiffs' land, but not by any obstruction placed in the stream, or by any failure in the construction of the sewer to provide a proper method of carrying off the water

by the defendants, but by somebody below them, the defend-
ants would not be responsible for that, and your verdict would
be for the defendants. If they have done their duty and the
injuries result from a failure of somebody below to perform
their duty, the plaintiffs must look to such persons for any dam-
age such failure to perform their duty may have caused them
and not to the defendants.] [5]    [But, if it is occasioned by
the defendants, the plaintiffs would have a right to recover;
and they have called your attention to the measurements of this
sewer and say that it follows, as they contend, that the sewer
being smaller than the stream above the damages result from
the action of the defendants in constructing the sewer, and
they are responsible. Mr. Bierer says that these floods have
occurred frequently since 1885, and a number of times he speaks
of.] [6]

"Now in passing upon this case, if you should find from the
testimony, after going over it all carefully, that the defendants
have obstructed the flow of the water in that stream to such an
extent as to make them liable to the plaintiffs—that is, that
they have obstructed the stream or constructed their sewer in
such a way that it will not carry off the usual stages of water
and the ordinary freshets to which that stream is subject, then
they are liable and your verdict must be for the plaintiffs.
[You will bear in mind, however, that it is only the usual stages
of water and the ordinary freshets that they are responsible for;
unusual stages or extraordinary floods the defendants would
not be responsible for.] [7]

"Now the plaintiffs have requested us to instruct you:

"'3. If the jury believe all the testimony in the case, the
verdict should be for the plaintiffs for substantial damages, the
uncontradicted evidence being that the natural course of the
stream of water in question has been turned by the obstruc-
tions placed therein by the defendants so that it now flows on
plaintiffs' land.' *Answer:* In reply to that point, we say to you,
that the plaintiffs are entitled to recover any such amount of
damages as they may have shown you they have suffered, if you
believe from the evidence that this flow of water has been oc-
casioned by any acts of the defendants in obstructing the flow
of the water of that stream and changing its course. [11]

"The defendants requested us to instruct you:

" ' 1. If the defendants kept and maintained the channel of the stream and culvert on their land in a condition to carry off the water at ordinary stages and freshets, they would not be liable for the increased flow of the water upon plaintiffs' land, caused by extraordinary floods and the acts of plaintiffs in enlarging the capacity of the channel on their land by raising the banks of the stream beyond their ordinary and usual height.' Affirmed. [12]

" ' 2. The defendants would have a right to protect their land from an extraordinary flow of water caused by plaintiffs increasing the capacity of the channel on their land beyond its original construction and its ordinary condition.' *Answer :* In answer to that, we say to you that what the defendants were obliged to provide for was the usual and ordinary stages of water, including usual and ordinary freshets in and carried by the channel of that stream as it came from their land in its usual and ordinary condition. They wouldn't be obliged to provide for an extraordinary flow of water in that channel, caused by the defendants throwing up the banks of the stream, making it to carry more water than usually flows in that course. [13]

" ' 3. If the defendants kept and maintained the channel of the stream and culvert on their land in a condition to safely carry off the ordinary flow of water and ordinary freshets, they would not be responsible for any increased flow of water on plaintiffs' land, caused by the act of any lower riparian owner in obstructing the channel.' Affirmed." [14]

Verdict and judgment for defendants. Plaintiffs appealed.

*Errors assigned* were (1–7, 11–14) instructions; (8–10) rulings on evidence; quoting instructions and the bills of exceptions; (15) that the charge was misleading and diverted the attention of the jury from the only proper point in the case, viz.: The ascertainment of damage sustained by plaintiffs.

*Edward Campbell,* for appellants, cited : Washburn, Easements, 439; Luther v. Winnisimmet Co., 9 Cush. 171; Rhoads v. Davidheiser, 133 Pa. 226 ; Bellas v. Pardoe, 15 Atl. R. 662; Zell v. Society, 119 Pa. 390.

*R. E. Umbel, A. D. Boyd* and *John M. Core* with him, for ap-

pellees, cited: Gould on Waters, 366; Hetrich v. Deachler, 6 Pa. 32; Wagoner v. Sholl, 4 Dal. 211.

PER CURIAM, May 22, 1893:·

The right of plaintiffs to recover depended on questions of fact which were exclusively for the consideration of the jury. An examination of the learned judge's charge in connection with the testimony has failed to convince us that there was any error in submitting those questions.    There is evidence tending to show that the defendants' culvert contributed to the overflow of water by which plaintiffs' land was injured, and it may be that, on the whole evidence, the jury should have found in their favor; but the only remedy for that error, if there was one, was in the court below, and its action in sustaining the verdict is not reviewable here.

We are not satisfied there is° any error in the rulings complained of in the 8th to 10th specifications inclusive, nor in the court's answers to points recited in the 11th to 14th specifications inclusive.    We think the complaint in the 15th and last specification that " the charge, as a whole, is misleading and diverted the attention of the jury from the only proper point in the case, viz.: the ascertainment of the damage sustained by the plaintiffs," is not well founded.

There appears to be nothing in either of the specifications of error that requires a reversal of the judgment.

Judgment affirmed.