BOARD OF DIRECTORS OF ST. FRANCIS LEVEE DISTRICT v. BARTON.

Opinion delivered November 29, 1909.

1. LIMITATION OF ACTIONS—OBSTRUCTION OF STREAM.—Where a properly constructed levee permanently obstructed the drainage of land and thereby caused it to overflow, the injury was an original one, and the statute of limitations began to run from the time the levee was constructed, though the effect of the obstruction did not immediately become apparent. (Page 408.)

2. LEVEES—DAMAGE TO LAND—WHO MAY RECOVER.—Where a levee which was properly constructed caused a permanent injury to land by ob-

structing the drainage thereof, the injury was caused at the time the levee was constructed, and a subsequent tenant of the land who had no interest therein at the time of the injury has no cause of action on account of his crop being overflowed.    (Page 413.)

Appeal from Crittenden Circuit Court; *Frank Smith,* Judge; reversed.

*H. F. Roleson,* for appellant.

A railroad company which owns the fee of the right of way may lawfully erect a solid embankment, although the result is to stop the flow of surface water.   31 Am. R. 216; 35 Me. 200; 141 Mass. 174; 38 Am. R. 754; *Id.* 139; 41 Minn. 384.   A canal company, acting under authority of the Legislature, is not liable for damages for cutting off the flow of surface water, 2 Johns. 283; 53 Am. R. 581; 21 L. R. A. 593.   The action was barred by the statute of limitations.   52 Ark. 240; 62 Ark. 360; 35 Ark. 622; 86 Ark. 406; 20 L. R. A. (N. S.) 894; 88 C. C. A. 236; 161 Fed. 72.

*A. B. Shafer,* for appellee.

The action was not barred by the statute of limitations.   52 Ark. 240; 32 S. W. 651.

McCULLOCH, C. J.   This is an action at law instituted on April 1, 1908, by Chas. G. Barton and another, partners as Barton Brothers, against Board of Directors of St. Francis Levee District, to recover damages alleged to have been sustained by reason of the construction of a solid embankment across certain lakes and bayous, thereby obstructing the lakes so as to cause water to be impounded in said lakes and bayous, eventually overflowing lands cultivated by plaintiffs.   They alleged in substance that they own a lease for term of years (including the years 1906 and 1907) on a farm in Crittenden County, Arkansas, containing about two thousand acres, adjoining the levee constructed by defendant levee district; that prior to the construction of the levee in 1899 water flowing on these lands drained into various sinks, depressions, lakes and bayous near thereto, and finally found its way into Big Lake and Marion Lake, thence through bayous which were natural streams and drains into the Mississippi River; that the levee was constructed and maintained as a solid embankment **across these lakes,** bayous and natural drains, so as to

entirely stop the escape of any water; that afterwards rain water and seep water in great quantities began, on account of said stoppage of the outlets, to become impounded in the lakes and bayous until the year 1906, when, during that year and the year 1907, it encroached upon the lands leased and cultivated by plaintiffs and rendered 600 acres of it unfit for cultivation during those years, and also destroyed and injured crops and made part of the plantation inaccessible. They also alleged that the damages were not at first apparent, and did not become apparent until the spring of 1906, when water began to be impounded in the lakes and bayous on account of the stoppage of the drains.

Defendant answered, admitting that the levee was constructed in the year 1899 as a solid embankment across the streams, bayous and drains, but alleged that the levee was constructed, and has been constantly maintained, in the best manner known to engineering skill and experience, and that no negligence has been committed in that respect. Among other defenses, the answer alleges that plaintiff's cause of action did not accrue within three years next before the commencement of the action, and the statute of limitation was pleaded.

There was a trial before a jury, which resulted in a verdict and judgment in favor of plaintiffs for the recovery of damages, and defendant appealed.

The levee was constructed in the year 1899 as a solid embankment across all lakes, bayous, streams and drainways of every kind, thus totally and completely obstructing the passage of water into the Mississippi River, and it has been continuously maintained in that condition up to the present time. It was expressly agreed by plaintiffs' counsel during the progress of the trial that the levee was properly constructed, thus eliminating the question of negligence from the case. No change was made in the levee after that time, and defendants have done nothing since the levee was originally constructed in 1899 to cause damage to plaintiffs' lands or crops. Was the right of action barred when this action was commenced in 1908?

Plaintiffs' theory of the case is that, though the levee was constructed as a solid embankment more than three years before the commencement of this action, and thus constituted a total obstruction to drainage, the injury did not become apparent until

within a period of less than three years before the action was commenced, and that it was therefore not barred. There was testimony introduced by the plaintiffs tending to support this contention of fact, and the court submitted the case to the jury on that theory.

There is perhaps no subject of the law about which there is a greater conflict of judicial opinion than the one concerning the application of the statute of limitations to injuries of this character, and scarcely any class of cases presents such difficulties for the application of settled principles. This court has, in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Biggs,* 52 Ark. 240, laid down general rules, which have been steadily adhered to, though, as already stated, the application of those rules in the nature of each case have presented many difficulties. The court there said: "Whenever the nuisance is of a permanent character, and its construction and continuance are necessarily an injury, the damage is original, and may be at once fully compensated. In such case the statute of limitations begins to run upon the construction of the nuisance. * * * * But when such structure is permanent in its character, and its construction and continuance are not necessarily injurious, but may or may not be so, the injury to be compensated in a suit is only the damage which has happened; and there may be as many successive recoveries as there are successive injuries. In such case the statute of limitations begins to run from the happening of the injury complained of."

In the application of these rules this court has repeatedly held in cases where obstructions to drainage were total and permanent, such as by the building of a solid embankment across a drain, either natural or artificial, that the damage is original, and must be fully compensated in one action. Thus, in *St. Louis, I. M.·& S. Ry. Co.* v. *Morris,* 35 Ark. 622, where "a solid roadbed embankment was built across a wet weather stream which drained an area of several square miles," this court held that the damages were original, and that the action for a recovery thereof must be commenced within three years from the time the embankment was completed. In *St. Louis, I. M. & S. Ry. Co.* v. *Anderson,* 62 Ark. 360, the defendant had closed up a trestle over a ditch near the plaintiff's farm, thereby stopping

the drainage of water from the farm, and the court held that the damage was original. In the opinion the court said: "So, in this case the obstruction of the ditch was permanent; that is, it will continue without change from any cause except human labor. The effect of it was to restore the land drained to the condition in which it was before the ditch was dug. Its present and future effect upon the land could be ascertained with reasonable certainty. The damage was original, and susceptible of immediate estimation. 'No lapse of time was necessary to develop it.' It was the difference between the value of the land as it would have been with the ditch open and the value of it with the ditch closed. * * * * * As the law does not favor the multiplicity of suits, and all damages which will be sustained as the necessary result of the filling of the ditch in question, and are recoverable, could have been estimated at the time of such obstruction, from the effect of it upon the value of the land, only one action should be brought therefor, and that within three years after the ditch was closed up."

.This rule was again clearly recognized in *Chicago, R. I. & P. R. Co.* v. *McCutchen,* 80 Ark. 235. In that case the judges here differed as to what facts the testimony established. A majority concluded that the railroad had not built an embankment across the ditch and closed it up, but had merely been guilty of negligence in allowing dirt to slide off the roadbed into the ditch and fill it up from time to time; so we held that the damage was not original, and that there could be successive recoveries for each successive injury. Chief Justice HILL, differed as to the facts. He thought that, according to the testimony, the ditch had been filled up for more than three years, and that the injury was permanent and the damages original. Therefore he dissented. In the opinion, after referring to the other decisions of this court on the subject, we said: "The distinction between the Anderson case and those last cited is that in the former there was a complete obstruction of the drainway, thus creating a permanent obstruction which necessarily caused a permanent injury, whilst in the latter there was only a partial obstruction which rendered the drainway insufficient at times, and made the future injury dependent upon the seasons and the quantity of rainfall."

The same principle was also applied in *Turner* v. *Overton,* 86 Ark. 406, 20 L. R. A., N. S. 894, where damages were sought to be recovered for straightening the channel of a creek, thus accelerating the current and causing it to overflow plaintiff's land. We held that the damage was original, and must be recovered in an action commenced within three years after the channel was changed.

Gould, in his work on Waters, § 416, says: "The plaintiff is required to recover in one suit the entire damages, present and prospective, caused by the defendant's act. Injuries caused by permanent structures infringing upon the plaintiff's rights in his land, such as railroad embankments, culverts and bridges, permanent dams and permanent pollutions of water, fall in this class."

We find the following statement of the law on this subject in Farnham on Water and Water Rights, vol. 2, § 586: "The rule that every continuance of a nuisance is a fresh nuisance should have no application in case of permanent nuisances of this class, any more than it should be contended that a trespass upon the land and erection of a structure there should constitute a fresh trespass every moment it was continued, for the purpose of extending the time within which the action could be brought. And there are cases which have applied the true rule that, in case the dam is a permanent one, the limitation period will begin to run against the right of action to recover damages for the injuries from the time the dam is built. The rule that the statute of limitations is not available to defeat an action for damages for the flooding of land until the right to flood it has been acquired by prescription, since every continuance of the injury is a fresh nuisance, is a mere arbitrary rule invented by the courts to meet the necessities of an apparently hard case. The difficulty seems to be that the courts have confounded two distinct rights of action. As was seen in a preceding section, it is held that ejectment will not lie to destroy an inchoate flowage easement. To avoid the effect of that ruling, the courts which apply the successive injury doctrine in order to prevent the acquisition of an easement in real estate in less than the prescriptive period hold that the nuisance is a continuing one, and that the action may be brought at any time

until the right to maintain it has been acquired by prescription. The latter holding seems illogical. If a permanent obstruction is erected so that it casts water across the boundary line on to the land of the upper owner, the injury is complete at the time the obstruction is erected and the injury done." See also *Gulf, C. & S. F. Ry. Co.* v. *Mosely,* 161 Fed. 72, and extended note in 20 L. R. A., N. S. 885; *Priebe* v. *Ames,* 104 Minn. 419, and note in 17 L. R. A., N. S. 206; *Central Branch Union Pac. Rd. Co.* v. *Twine,* 23 Kan. 585; *Fowle* v. *N. H. & N. Co.,* 107 Mass. 352.

Learned counsel for plaintiffs relies on the case of *Barnett* v. *St. Francis Levee District,* 102 S. W. 583, decided by the St. Louis Court of Appeals, where it was held that "the right of action for the negligent construction of a levee, in that it was built as a solid bank of earth across an outlet of a lake, instead of having a flood gate for drainage purposes, whereby water which would have drained off was caused to overflow lands, does not accrue when the levee is built, but when the overflow actually occurs."

There is a distinction between that case and the one now before us in the fact that it was found that damages were caused by the negligent construction of the levee, whereas in the present case it is conceded that there has been no negligence. But, whether that distinction is a controlling one or not, the decision of the Missouri court is in conflict with several of our own decisions, and it affords no reason for us to change the settled doctrine of this court.

The undisputed evidence establishes the fact that the levee was constructed in 1899, about nine years before the commencement of this action. The embankment was built across those streams and bayous, and completely stopped the drainage. Whatever damage accrued to adjoining lands was done then, for the construction of the embankment necessarily caused injury to all lands drained by those streams and bayous, though the exact amount of damage to crops from year to year could not with certainty be then determined. But the injury to the lands was a permanent one, and the damages were original, and compensation should have been sought in one action brought within the period of limitation. The action was barred.

It would perhaps be more accurate, instead of saying that plaintiffs' cause of action was barred, to say that the injury done by the construction of the levee in 1899 was a permanent injury to the land, and not to the crops subsequently planted and grown thereon; and, as plaintiffs did not own the land, and had no interest therein at the time the injury was inflicted, no cause of action ever arose in their favor.

The defendants also pleaded the bar of a special statute of limitation, enacted by the General Assembly of 1905 with reference to damage caused by the St. Francis Levee District (p. 152, § 10)', and the court sustained a demurrer to the plea; but as counsel on neither side have discussed that question here, we do not deem it necessary to pass on the question of the effect or validity of that statute. As the evidence affirmatively shows that the cause of action is barred, it is useless to remand the case for a new trial.

Judgment is therefore reversed, and cause dismissed.