McAlister v. St. Louis, Iron Mountain & Southern
Railway Company.

Opinion delivered February 17, 1913.

Appeal and error—permanent nuisance—obstruction of drainage—
law and fact.—In an action by an adjacent land owner against a
railway for damages to his land from overflow, caused by the
filling of an old drain and the construction of a culvert, it is a
question of law for the court, under the pleadings, to declare that
the character of the nuisance complained of was permanent, but
it was for the jury on the issue of damages, and it is error to
withdraw the case from the jury.

Appeal from Clark Circuit Court; *Jacob M. Carter*, Judge; reversed.

STATEMENT BY THE COURT.

The appellants were the owners of certain farm
lands in Clark County. The appellee is a railroad cor-
poration, having a line of road running through these
lands. The appellants sued the appellee, setting up that
appellee had negligently closed a certain drain and
opened a culvert through its roadbed on appellant's land,
and that by reason of such negligence, on July 15 and
on August 15, 1911, appellant's crops were greatly dam-
aged and destroyed on account of heavy rainfalls occur-
ring on the above dates respectively. The damages to
the crops were specified, aggregating $1,152, for which
appellants prayed judgment.

The appellee denied the allegations as to the negli-
gent construction of the drain and culvert and denied the
damages, and set up that it "did open the culvert com-
plained of; that the said culvert is a permanent improve-
ment made for the protection of its roadbed;" and alleged
that if appellants "have sustained damages it was by
reason of the permanent improvement of its roadway,
and that the only damage is the decrease in the market
value of their land by said permanent improvement."

The prayer was that "if judgment be rendered
against it that it be for the decrease in the market value
of the lands and not for damages to crops grown
thereon."

Appellants replied to the answer, denying that it was necessary to construct the drain and culvert in the manner alleged, and stating that "if it should be determined, in accordance with the allegations and prayer of defendant's answer, that plaintiffs are entitled to permanent damages only, then they allege that they had seventy-seven acres in the tract described in the complaint, the value of which will be damaged by the continuance of said new opening, if same is permitted to remain, and that said lands would be damaged $3,500;" and concluding with the prayer that "if permanent damages only are to be allowed, they pray for alternate relief, for $3,500."

There was testimony on behalf of the appellants tending to show that in May, 1910, appellee constructed a culvert under its track and at the same time closed an old drain on the lands of appellants that ran under its tracks. Appellants' farm lands lay on both sides of the railroad. Before the old drain was closed and the new culvert constructed the water would back up a little, but "would run off easily as soon as it could get through the old drain." In 1911 there was "an awful rainfall. The water hit the sills of the trestle." The water stayed on the land three or four days, damaging appellants' crops, which damages are specified.

There was testimony tending to show that the land was wetter since the trestle was constructed than it was before. Before the trestle was constructed the water was not precipitated on the land as it is now, and it did not stand there as it did in 1911 when the damage to the crops occurred.

The testimony on behalf of the appellee tended to show that the trestle complained of was put in because of a necessity for a change of drainage along appellee's track through appellants' land at the point complained of. The old drain was closed and the new trestle under the track was put in at the point complained of "to prevent danger to traffic and water waste to the track. It is absolutely essential for the railroad, in order to protect its roadbed and render it safe, to maintain this culvert.

The lowest point for the natural drainage is where the new culvert was located. It was installed to be a permanent improvement and was necessary to protect the track at that point.''

Another witness testified that ''this new opening was in the nature of a betterment to forestall possible washouts and to take care of such conditions as we had in 1905 and 1908.''

The record shows that ''at the trial the plaintiff offered to prove what would have been the permanent damages to plaintiffs' land provided the court should hold that they were only entiled to recover permanent damages to the land, and not damages to the crop of 1911. The said witnesses were ready to testify as to the amount of said permanent damages to the land, but the court refused to allow them to do so, and to this refusal plaintiffs at the time excepted and asked that their exceptions be noted of record, which was done.''

The court instructed the jury to return a verdict for the defendant. The appellants excepted to the court's peremptory instruction. From a judgment in favor of the appellee appellants duly prosecute this appeal.

*John H. Crawford,* for appellant.

1.  In a case where a verdict is instructed against the party appealing, if there is any legal, *prima facie* evidence in the record that would support a verdict, it should be the rule that the abstract would be sufficient if it covers that evidence without making reference to the evidence that may have been introduced by appellee. Here the matter to be determined is whether or not appellant's evidence is sufficient on which to base a verdict when given its strongest probative force; and, regardless of the case made by the appellee, if he has made out a *prima facie* case, he is entitled to have it submitted to a jury. 22 App. D. C. 181, 62 L. R. A. 875.

2.  The court erred in directing the verdict because of the disputed questions of fact whether or not it was necessary to close the old drain and open a new one, and

whether or not the construction of the culvert was such a permanent improvement as would call for the assessment of damages to the land only and not to the crops. 97 Ark. 438; 105 Ark. 106.

3. Appellee had no right to obstruct and close the natural drain, and when it did so without appellant's consent they were entitled to compensation for their damages. Acts 1909, p. 897; 62 Ark. 360; 92 Ark. 465; 93 Ark. 47; 99 Ark. 128; 95 Ark. 297.

4. The new culvert was not a necessary permanent improvement, but falls within that class of cases where when the improvement is first put in it is not certain that it will cause injury, and is not necessarily dangerous but might or might not cause injury, owing to rainfall conditions. 56 Ark. 612; 72 Ark. 127; 76 Ark. 542; 52 Ark. 240.

Even if the improvement complained of was of a permanent character it would not fall within the rule in the Morris case, 35 Ark. 622, and the Anderson case, 62 Ark. 360, unless it was a necessary one to be maintained for the protection of appellee's track and for the public good, and was of a necessarily injurious character.

*E. B. Kinsworthy, R. E. Wiley* and *W. G. Riddick,* for appellee.

1. An offer to prove "what would have been the permanent damages to the land provided the court should hold" that appellants were entitled to recover only permanent damages, without showing what the evidence was, or that the witnesses were competent to testify on the point, or that the testimony to be offered was competent and admissible, is too broad, and is not a good offer of testimony. 67 Ark. 371-375; 73 Ark. 407; 38 Cyc. 1332; *Id.* 1333, 1334; 38 Ind. 67; Elliott, App. Proc. § 743. It is clearly within the discretion of the court to refuse admission of testimony offered after all the evidence was in. 75 Ark. 325; 38 Cyc. 1367.

The prayer in the appellant's reply for damages for the permanent injury to the land, if the court should decide that they were entitled to permanent damages only,

was not such a pleading as is recognized by our practice. It is of no effect whatever, and the court should have struck it out. Kirby's Dig. § 6108; 33 Ark. 56; 44 Ark. 293; 75 Ark. 183.

2. The damage resulted from a permanent improvement and was original. For such an improvement the recovery would be for the entire damage, present and prospective. 92 Ark. 411; Gould on Waters, 416; 52 Ark. 240; 62 Ark. 360; 93 Ark. 46; 35 Ark. 622; 92 Ark. 465; 86 Ark. 406.

Wood, J., (after stating the facts). The evidence showing the character of the obstruction to the flow of water through appellant's land and the consequent effect thereof was undisputed. This testimony showed that the filling up of the old drain and the construction of the trestle for a new outlet for the water was of a permanent character and that its construction and continuance were necessarily injurious to appellant's land. The testimony brings the present case clearly within the doctrine of this court as announced in *St. L., I. M. & S. Ry. Co.* v. *Biggs*, 52 Ark. 240, where we said: "Whenever the nuisance is of a permanent character and its construction and continuance are necessarily an injury, the damage is original, and may be, at once, fully compensated." See to same effect *St. L., I. M. & S. Ry. Co.* v. *Anderson*, 62 Ark. 360; *Turner* v. *Overton*, 86 Ark. 406; *St. Francis Levee District* v. *Barton*, 92 Ark. 411; *Kelly* v. *K. C. So. Ry. Co.*, 92 Ark. 465; *St. L., I. M. & S. Ry. Co.* v. *Magness*, 93 Ark. 46.

Under the pleadings and the undisputed evidence, the court erred in directing a verdict, but it should have permitted appellants to prove, as they offered to do, the amount of the permanent damages to their land by reason of the nuisance complained of. The request and the offer were sufficiently specific under the pleadings. The court was asked, and it was its duty, under the evidence, to find whether or not the nuisance was of a permanent character, and under the uncontroverted facts it should have declared that the nuisance was permanent and

granted the request of appellants to permit them to show the extent of the damage which they had incurred by reason of such nuisance. Appellee's answer, in which it set up that the damages sustained by appellants were "by reason of the permanent improvement of appellee's roadway resulting in the decrease in the market value of appellant's land by said permanent improvement," and appellant's reply to this, in which they also claimed that "if the nuisance was of a permanent character the lands would be damaged in the sum of $3,500," and praying for such damages, were sufficient to have the cause sent to the jury on the issue of the extent of appellant's damages. Under the pleadings and the evidence the court should have treated the case as one instituted to ascertain the amount of the damages to appellants, if any, by reason of the filling of the old drain and the construction of the culvert. It was a question of law for the court to declare that the character of the nuisance complained of was permanent, but it was an issue for the jury as to the amount of the damages. The appellants were in apt time in their offer to introduce evidence to show the amount of their damages, and the court erred in refusing them that privilege and in directing a verdict in favor of the appellee.

The judgment, for the error indicated, is therefore reversed and the cause is remanded for a new trial.