RUSSELL v. BOARD OF DIRECTORS OF RED RIVER LEVEE

DISTRICT No. 1.

Opinion delivered October 27, 1913.

1. LIMITATION OF ACTIONS—CONSTRUCTION OF LEVEE—ORIGINAL DAMAGE. —Where a levee permanently obstructed the drainage of land and caused the same to overflow, and the owner of the land had knowledge of the condition, the damage was original, and the cause of action therefor arose immediately upon the completion of the levee. (Page 23.)

2. LIMITATION OF ACTIONS—ACTION FOR DAMAGES AGAINST A LEVEE DIS-
TRICT.—Under sections 8 and 10 of Act No. 53, Acts of 1905, p.
143, all suits for damages against a levee or drainage district, for
appropriation of lands or construction and maintenance of levees
or drains, must be instituted within one year after the con-
struction of such levee or drain. (Page 23.)

Appeal from Lafayette Circuit Court; *Jacob M. Car-
ter,* Judge; affirmed.

STATEMENT BY THE COURT.

Appellants were the owners of certain lands situ-
ated in Lafayette County, Arkansas, and brought suit
against the appellee levee district for damages alleged to
have been done these lands by the construction of its
levee. The levee district was organized under the act
of the General Assembly of this State of March 16, 1905,
and, according to the allegations of the complaint, had,
without condemnation or other legal proceedings, en-
tered upon and appropriated a certain part of appel-
lants' land, amounting to twenty acres, and had also con-
structed its levee across two natural waterways called
Bull Bayou and Maneese Bayou, thereby completely
damming up said bayous, and overflowing the adjacent
lands, which had formerly been drained by these bayous
into Red River. That after the construction of the levee
across these bayous near their mouths the water began
to collect from a large scope of territory tributary to
said bayous and spread out over the land and killed a
large quantity of timber.

It was further alleged that the levee was built across
Bull Bayou in 1907, but the construction of the levee was
stopped before Maneese Bayou was reached and that
bayou was left unobstructed. That thereafter in 1908
the accumulation of water was such that it broke said
levee at Bull Bayou and the impounded water thereby
made its outlet into Red River. That in April, 1909,
the levee district again closed up Bull Bayou, and also
closed up Maneese Bayou, without providing any means
of escape for the accumulation of drainage water. Proof
was offered tending to sustain all these allegations of

the complaint, and the proof showed that when the levee was rebuilt across Bull Bayou it was raised and enlarged and had since continuously impounded the water on appellants' lands. Appellants sought to excuse their delay in instituting this suit by testifying that they did not believe the levee would hold the water, and that they did not know the exact damage that would be done if the levee did not break. One of the appellants testified as follows:

"When Bull Bayou was dammed up, I was there one time, either just before or just after it broke through, and the water was then two feet high in the field, within two and a half feet of the high water mark, and the river was ten or fifteen feet below the bank of the river in its channel. The levee washed out at Bull Bayou and several other places, and the water that had been held by the levee went into Red River. They took the water off of these lands. Later on, say two years later or something like that, they rebuilt the dam across Bull Bayou and also built along down and closed up Maneese Bayou."

The suit was filed March 27, 1911, which was about two years after the final completion of the levee across Bull Bayou and something more than a year after the completion of the levee across Maneese Bayou.

At the conclusion of the evidence the court instructed the jury that as the suit had not been commenced within one year after the final completion of the levee that it was barred by section 10 of Act No. 53 of the Acts of 1905, page 143, and the jury, under the directions of the court, returned a verdict in favor of appellee, and this appeal is prosecuted from the judgment pronounced thereon.

*Webber & Webber,* for appellants.

The cause of action did not arise until the damage occurred. 155 S. W. 127. If it is known merely that damage is probable or uncertain, the statute does not run until the injury occurs. 52 Ark. 240; 86 *Id.* 406; 72 *Id.* 127; 80 *Id.* 235. The appellants are not barred.

*Henry Moore, Jr.*, for appellee.

Appellants are barred. Acts 1905, § 10; 95 U. S. 628; 78 Ark. 398; 107 Ark. 330.

SMITH, J., (after stating the facts). There can be no question about the permanency of this levee. It is true the levee which was built in 1907 gave way in 1908, but the following year saw the levee enlarged and strengthened, and appellants can not plead their incredulity in the face of these physical facts. That damage would result from the construction of this levee was certain, and appellants had seen before the first break in the levee the certainty of damage and the approximate nature and extent of this damage. The damage was original and the cause of action therefor arose immediately upon the completion of the levee. *Board of Directors* v. *Barton,* 92 Ark. 406.

The general statutes of limitation against causes of action, such as the one here sued on, is three years, but the Legislature of 1905, by Act No. 53, passed at that session, provided a method for the exercise of the right of eminent domain by levee, drainage and ditching districts, and also provided a period of limitations against such suits. Sections 8 and 10 of said act read as follows:

"Sec. 8. Whenever the Board of Directors of the St. Francis Levee District, or any other levee or drainage district, may have appropriated, or shall appropriate, any land for right-of-way for the construction and maintenance of either levees, ditches, canals or drains, and constructed levees or drains thereon, without having procured the consent of the owner or owners of such land to construct the levees or drains, or procured the right-of-way, either by purchase, donation or condemnation, such owner, or owners, where their cause of action has not been barred by the statute of limitation, shall have a cause of action against such Board of Directors of the St. Francis Levee District, or any other levee or drainage district, for the market value of the land at the time it was actually occupied, and such damages for inconvenience of crossing from one portion of

the tract, then owned by the parties seeking to recover, to the other portion of the tract, as they have sustained, and such damages as the owner, or owners, may have sustained on account of obstruction of natural drainage to the tract of land, over which the levee or drain may have been or shall be constructed, not to exceed the cost of constructing artificial drainage."

"Sec. 10.   All actions for the recovery of damages against any levee or drainage district for the appropriation of land, or the construction or maintenance of either levees or drains, shall be instituted within one year after the construction of such levees or drains, and not thereafter; *provided,* that any person, persons or corporation, who may have any existing claims against any levee or drainage district on account of appropriation of land, for the purpose of constructing either a levee, ditch, canal, or drain, or on account of the construction or maintenance of either a levee, ditch, canal, or drain, shall bring their action within six months after the passage of this act, and not thereafter."

We conclude, therefore, that the court below properly instructed the jury that the suit was barred by the provisions of said Act 53, and the judgment is therefore affirmed.