CITY OF MEMPHIS, TENN., v. BOARD OF DIRECTORS OF ST. FRANCIS
LEVEE DIST. et al.

(District Court, E. D. Arkansas, W. D.    March 6, 1916.)

No. 5757.

1. COURTS ☞366(13)—UNITED STATES COURTS—STATE LAWS AS RULES OF DE-
CISION—STATUTES OF LIMITATION.

In the national courts the limitation of actions is governed by the lex
fori and controlled by the legislation of the state in which the action is
brought as construed by the highest court of that state, even if the legis-
lative act or the judicial construction differs from that prevailing in other
jurisdictions.

[Ed. Note.—For other cases, see Courts, Dec. Dig. ☞366(13).]

2. LIMITATION OF ACTIONS ☞180(2)—PLEADING—AVAILABILITY ON DEMURRER.

It is the rule in Arkansas that a demurrer will lie when it appears from
the complaint in an action at law that sufficient time has elapsed to bar
the cause of action and no ground for avoiding the bar is alleged in the
complaint.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 671;
Dec. Dig. ☞180(2).]

3. PLEADING ☞8(2)—FACTS OR CONCLUSIONS.

In an action for damages claimed to have been due to levees, embank-
ments, and dikes on the west bank of the Mississippi river raising the high-
water stage of the river and causing the water to back upon and over prop-
erty on the east bank, an allegation that such dikes, embankments, and
levees were not of a permanent character, was only a conclusion of the
pleader, and the facts set out in the complaint showing that they were
permanently controlled.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 13; Dec. Dig.
☞8(2).]

4. LIMITATION OF ACTIONS ☞55(7)—OBSTRUCTIONS OF STREAMS—PERMANENCY
OF OBSTRUCTIONS

That dikes, embankments, and levees on the west bank of the Mississippi
river, which raised the high-water stage of the river and caused the water
to back upon and over property on the east bank, required constant care
and attention and prior to 1910 were washed away and broken annually
at many times and places by high water, and that since 1910 they had been
so enlarged and increased in height that the number of breaks had been
lessened and they had become more effective in backing up and confining
the high waters and had raised the high-water stage five feet higher than
previously, and that the high waters so held back and confined by such
dikes, embankments, and levees, as so constructed, enlarged, and increased
in height, had washed away and broken and damaged property on the east
bank, did not show that the levees and embankments were not intended
to be permanent as originally constructed, and limitations therefore ran
from the time of their completion.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 305;
Dec. Dig. ☞55(7).]

5. NAVIGABLE WATERS ☞39(5)—INJURY FROM OBSTRUCTIONS—LIABILITY FOR
DAMAGES—PROXIMATE CAUSE.

In 1891, railroad companies and a bridge company constructed a series
of embankments or dikes extending in a northwesterly direction from the
west bank of the Mississippi river opposite the city of Memphis. It was
specifically alleged that these embankments caused no injury to the city
until a levee district constructed levees and increased their height in 1909,
raising the high-water stage of the river so that it backed upon and over
parts of the city of Memphis, damaging its pumping plants, sewerage sys-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tems, streets, and highways. It was not claimed that the railroad companies had no right to make the embankments at the time they were constructed, or that they negligently constructed them. *Held* that, regardless of limitations, the railroad companies and the bridge company were not liable to the city, as the building of the embankments was not the proximate cause of any damages and the building of the levees could not have been foreseen by such companies, and the breach of duty upon which an action is brought must be not only the cause but the proximate cause of the damage to plaintiff, and the damage ought to have been foreseen in the light of the attending circumstances.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 82, 103, 117, 127; Dec. Dig. ☞39(5).]

At Law. Action by the City of Memphis, Tenn., against the Board of Directors of the St. Francis Levee District and others. On demurrer to the complaint. Demurrer sustained.

The plaintiff, a municipal corporation of the state of Tennessee, lying on the east bank of the Mississippi river, brings this suit against the defendants, the board of directors of the St. Francis levee district, the Kansas City & Memphis Railway & Bridge Company, the St. Louis, Iron Mountain & Southern Railway Company, and the St. Louis & San Francisco Railroad Company, to recover $2,000,000 damages, alleged to have been sustained by it by reason of the destruction and injury caused to its waterworks plant, sewer system, streets, bridges, and other property, by the building of levees, embankments, and dikes on the Arkansas side of the Mississippi river, which is the boundary line between the states of Tennessee and Arkansas.

The material allegations in the complaint, after setting out the ownership of the property by the plaintiff, are that the alluvial valley of the Mississippi river extends from Cape Girardeau, in the state of Missouri, on both banks of the Mississippi river, to the Gulf of Mexico, varying in width from 4 to 40 miles above the mouth of the Red river, and to a much greater width below; that it is topographically divided into six large basins, of which four are on the west bank and two on the east bank, and into smaller basins; that from time immemorial the waters of the Mississippi river, during the annual high-water stage, were not confined within the low-water bank of the said river, but found outlets below Cairo, Ill., into the St. Francis river, and below the highlands near Helena, Ark., into the White River, Yazoo, Tensas, Atchafalaya, and Pontchartrain basins, and through the rivers draining these basins, and these basins, in their natural condition, would disburden the Mississippi river and store temporarily the annual freshets or high waters of said river; that prior to the construction of levees and the building of dikes and embankments, and the closing of the natural basin of the St. Francis river, by the defendants, the city of Memphis, and all parts thereof, was from 3 to 15 feet above the highest natural flood heights of the Mississippi river, and was not subject to overflow from the annual floods thereof, and the use and maintenance or operation of its water and sewer systems, or of the streets, pikes, highways, bridges, and bridge approaches, were not interfered with thereby; that between the years 1893 and 1899 the defendants the directors of the St. Francis levee district, jointly and in association and co-operation with various other levee districts, for the purpose of reclaiming the lands in the St. Francis river basin, and increasing their value, constructed a continuous line of levees from Point Pleasant, Mo., at the head of the St. Francis Basin, extending along the west bank of the Mississippi river, to a point about 28 miles north of the city of Memphis; that between the years 1899 and 1903 the levee district extended the said line of levees along the west bank of the Mississippi river to a point about 25 miles south of the city of Memphis, and since the year 1903 the said line of levees has been further extended along the west bank of the river to a point within a few miles of Helena, Ark.; that, since the beginning of the said continuous line of levees, the levee district has enlarged and increased the height of the said line of levees, until it has now reached a grade equal to 50 feet in height on the gauge of the Mississippi river opposite the plaintiff; that it has enlarged the said levees and increased the height thereof annually, so that when

there is now a high-water stage of the Mississippi river the flood waters of the Mississippi river are shut out from the St. Francis River Basin, into which they naturally flowed, and are confined by the said levee line within a narrower high-water channel than heretofore.

The complaint then proceeds to charge that the other defendants, the railroads and bridge company, about the year 1891, constructed a series of embankments, or dikes, outside of the line of levees and extending from the western approach of the bridge over the Mississippi river to Memphis, owned and maintained by the bridge company, to, or nearly to, the line of levees built by the levee district, and have annually since then increased and enlarged same and added to the height thereof, the said dikes and embankments now extending more than 4 miles in a northwesterly direction from the banks of the Mississippi river, opposite the southern portion of the city of Memphis; that at the time of the construction of the line of continuous levees from Point Pleasant, Mo., to the point 28 miles above Memphis, and at the time of the continuation and extension of the said line of levees, to its present length, and at the.time of the construction of the dikes and embankments by the railroad companies, the effect upon the natural and ordinary flood heights of the Mississippi river was not apparent, and could not be ascertained, nor could the injuries which resulted therefrom, and from the enlargements and increases in the heights be foreseen: that the dikes, embankments, and levees so constructed, enlarged, and increased in height by the defendants, obstructed and interfered with the natural flow of the waters of the Mississippi river in their natural high-water course, and caused the same to back up and acquire a height which would not be attained but for the obstruction of said waters by the dikes, embankments, and levees; that, when there is now a high-water stage of the river, the said waters, so held back, attain an unnatural elevation of more than 11 feet, and by reason thereof they were, during each of the years 1903, 1904, 1906, 1907, 1908, and 1909, backed upon and over a part of the northern section of the plaintiff, where are located the pumping plants of the water and sewerage systems of the plaintiff, and also over the streets, pikes, highways, bridges, and approaches thereto, in said northern section of the city of Memphis; that said dikes and embankments, and line of levees, are not of a permanent character, but they require constant care and attention, and prior to the year 1910 they were washed away and broken annually, at many times and places, by the high waters of the Mississippi river; that since the year 1910 the enlargements and increases in height have been such that the number of breaks therein have been lessened, and the said dikes and embankments and levees have become more effective in backing up and confining the said high waters of the Mississippi river, and since the year 1910 the increase in the elevation of said high waters, over the northern section of the plaintiff, has been more than 5 feet greater than in any previous height of said river; that between the years 1903 and 1909 these high waters backed upon and over the city of Memphis, and injured and interfered with the parts of said water and sewerage systems, and the streets and bridges, doing material injury thereto, the damages during these years amounting to large sums of money.

In the bill of particulars, filed by the plaintiff, no damages are set out as having been sustained prior to the year 1909.

The complaint further alleges that since the year 1909 the high waters of the river, so held back and confined by the actions of the defendants, have washed away and broken and totally destroyed parts of the pumping plants of the water and sewerage systems of the plaintiff, and parts of its streets, pikes, highways, bridges, and approaches thereto; that the value of the real and personal property so totally destroyed within the last six years, by reason of these acts, exceeds $250,000, as set out in the bill of particulars for the different years; that, in addition to this damage, the plaintiff was required to expend large sums of money, amounting to $1,488,066.88, as enumerated in the bill of particulars, all of which expenditures were necessary to prevent further and repeated injury to the property of the plaintiff; that all of these injuries were the direct and proximate result of the unnatural backing up and confinement and obstruction of the waters of the river, by the dikes, embankments, and levees, so constructed and enlarged, and increased in height, by the said defendants.

It is further alleged that, by the Constitution of the state of Tennessee, no property can be taken or applied to a public use without the consent of the owners, or without just compensation made therefor; that by the provisions of the Constitution of the state of Arkansas, no property, or right of way, shall be appropriated to the use of any corporation, until full compensation shall be first made. It is also claimed that the acts of the defendants are in violation of the Fourteenth Amendment to the Constitution of the United States. To this complaint separate demurrers have been filed by each of the defendants.

Barnette E. Moses, of Memphis, Tenn. (C. M. Bryan, of Memphis, Tenn., on the brief), for plaintiff.

L. C. Going and Allen Hughes, both of Memphis, Tenn., for Levee Dist.

B. R. Davidson, of Fayetteville, Ark., and Moore, Smith, Moore & Trieber and E. B. Kinsworthy, all of Little Rock, Ark., for defendant Railroad Companies.

TRIEBER, District Judge (after stating the facts as above). All the defendants assign as grounds of demurrer that the allegations in the complaint do not state a cause for action, and also that the complaint shows on its face that, if there ever was a cause of action, it is barred by the statute of limitations of the state of Arkansas.

The general statute of limitations of the state of Arkansas, upon which the defendant railroad companies rely, is the three-year statute. Section 5064, Kirby's Digest of the Statutes of Arkansas.

The statute of limitations which the levee district pleads is that of one year, under the provisions of section 10 of an act of the General Assembly of the state of Arkansas which became a law on February 24, 1905. Session Acts of 1905, p. 152. This act provides:

"All actions for the recovery of damages against any levee or drainage district for the appropriation of land, or the construction or maintenance of either levees or drains, shall be instituted within one year after the construction of such levees or drains, and not thereafter."

[1] That the limitation of actions is governed by the lex fori, and is controlled by the legislation of the state in which the action is brought, as construed by the highest court of that state, even if the legislative act or the judicial construction differs from that prevailing in other jurisdictions, is as well settled in the national courts, as any proposition of law. Among the numerous cases sustaining that rule, we refer to the following: Great Western Telegraph Co. v. Purdy, 162 U. S. 329, 339, 16 Sup. Ct. 810, 40 L. Ed. 986; Dibble v. Bellingham Bay Land Co., 163 U. S. 67, 73, 16 Sup. Ct. 939, 41 L. Ed. 72; Hartford Ins. Co. v. Chicago, etc., Ry. Co., 175 U. S. 91, 98, 20 Sup. Ct. 33, 44 L. Ed. 84.

The latest case on that point, which is controlling in this court, is Quinette v. Pullman Co., 229 Fed. 333, —— C. C. A. ——, decided by the United States Circuit Court of Appeals for the Eighth Circuit on January 5, 1916.

[2] It is the settled law of the state of Arkansas that, when it appears from the complaint in an action at law that sufficient time has elapsed to bar the cause of action, and no ground for avoiding the bar

of the statute is alleged in the complaint, a demurrer will lie. Collins v. Mack, 31 Ark. 684; Hutchinson v. Hutchinson, 34 Ark. 164; Anthony v. Railway Co., 108 Ark. 219, 157 S. W. 394; Cubbins v. Mississippi River Commission (D. C.) 204 Fed. 299, 308. The question therefore is whether the complaint shows on its face that the action is barred, and that there can be no recovery by reason thereof, regardless of the merits of the case.

That the act of 1905, limiting the time within which an action may be maintained for damages caused by a levee or drainage district, applies to such consequential damages as are charged in the complaint in the case at bar, was determined in Russell v. Board of Directors Red River Levee District, 110 Ark. 20, 160 S. W. 865. It was there held that:

"An action against a levee board for consequential damages, sustained by reason of overflowing the adjacent lands, by reason of the construction of the levee, is within the provisions of this act, and must be brought within one year."

[3, 4] But it is contended on behalf of the plaintiff that this rule only applies to permanent obstructions, and the complaint expressly charges that these levees were not of a permanent nature, until they were strengthened, and raised so as to be above the height of the flood waters of the Mississippi river. It is true that the complaint alleges "that the said dikes, embankments, and line of levees are not of a permanent character," but this is only the conclusion of the pleader, while the facts set out in the complaint show the exact reverse. The statement of facts controls. Alabama v. Burr, 115 U. S. 413, 426, 6 Sup. Ct. 81, 29 L. Ed. 435; McAlister v. St. Louis, etc., Ry. Co., 107 Ark. 65, 69, 154 S. W. 186.

"A demurrer admits only of matters of fact well pleaded, and not conclusions of law. Interstate Land Co. v. Maxwell Land Grant Co., 139 U. S. 569, 578 [11 Sup. Ct. 656, 35 L. Ed. 278]; Chicot County v. Sherwood, 148 U. S. 529, 536 [13 Sup. Ct. 695, 37 L. Ed. 546]."

The pleader undertakes to state why they are not of a permanent character, by alleging:

"That they require constant care and attention, and prior to the year 1910 they were washed away and broken annually, at many times and places, by the high water of the Mississippi river. That since the year 1910 the enlargements and increases in height have been such that the number of breaks has been lessened, and the said dikes and embankments and line of levee have become more effective in backing up and confining the said high waters of the Mississippi river; and, since the year 1910, the increases in the elevation of the said high waters, so backed up and confined, over and upon the northern section of the plaintiff city of Memphis, has been more than five feet greater than in any previous high waters of said river. * * * That since the year 1909, and within the last six years, waters of the Mississippi river, so held back and confined by the said dikes, embankments, and line of levees, so constructed, enlarged, and increased in height by the said defendants, as the direct and proximate result of such construction, enlargements, and increases in height thereof, have washed away and broken and totally destroyed, etc."

That levees and railroad embankments are intended to be permanent requires no extended argument. The fact that when they were first

constructed they were neither high nor strong enough to withstand the high water and were broken or submerged, thus overflowing the embankments and flooding the lands which the levees were intended to protect, is no proof that they were not intended to be permanent. Why were the millions spent, except for the purpose of protecting the lands behind the levees and the tracks of the railroad company from overflow? The levees were not needed when the river was below the danger line. Nor was it a wrong to raise them and strengthen them, if experience showed that unless this was done the purpose for which the money had been expended would fail. As well may it be said that warehouses and bridges, or any other structures, are not of a permanent nature, if, as necessity requires it, they are strengthened and repaired, so as to make them safe. An embankment so constructed as to let the flood waters through would not be a levee. We cannot for a moment presume that the officers of the complainant, especially its engineering department, ever entertained the idea that these structures were not intended to be permanent. Its engineers and other officials knew that the sole object of constructing these levees and embankments was to prevent the waters of the Mississippi river from flooding the lands. That such embankments and levees are permanent structures, and that the statute of limitations begins to run from the time that they are completed, has been judiciously determined by the Supreme Court of Arkansas in a number of cases. St. Francis Levee District v. Barton, 92 Ark. 406, 123 S. W. 382, 25 L. R. A. (N. S.) 645, 135 Am. St. Rep. 191; McAlister v. St. Louis, etc., Ry. Co., 107 Ark. 65, 154 S. W. 186; Chicago, Rock Island & Pacific Ry. Co. v. Humphreys, 107 Ark. 330, 335, 155 S. W. 127; Russell v. Board of Directors of Red River Levee District, supra.

Aside from these considerations, the complaint shows beyond question that ever since 1909, more than six years before the institution of this action, these levees and embankments were completed, and no reason whatever is stated why the action was not brought within the time prescribed by law.

[5] So far as the liability of the defendant railroad companies and the bridge company is concerned, there is another ground upon which the demurrer must be sustained, regardless of the statute of limitations. The allegations of the plaintiff show that the embankments complained of were constructed by these defendants in 1891; that these embankments caused no damages to the plaintiff. It is not claimed that at the time these embankments were constructed the defendants had no right to make them, or that they negligently constructed them. It is specifically alleged in the complaint that these embankments caused no injury to the plaintiff until after the board of directors of the levee district constructed their lines of levee, and raised them to the present height, which was done in 1909. These allegations clearly show that the building of the embankments by the defendant railroad companies was not the proximate cause of any damages suffered by the plaintiff, as the building of the levees was an independent and intervening cause. It is an elementary principle of law that the breach

of duty upon which the action is brought must be, not only the cause, but the proximate cause, of the damage to the plaintiff, and the damage ought to have been foreseen in the light of the attending circumstances. Of the numerous authorities on that point, we refer to the following: Milwaukee, etc., Ry. Co. v. Kellogg, 94 U. S. 469, 474, 24 L. Ed. 256; Scheffer v. Railroad Co., 105 U. S. 249, 26 L. Ed. 1070; Cole v. German Savings & Trust Society, 124 Fed. 115, 59 C. C. A. 593, 63 L. R. A. 416; American Bridge Co. v. Seeds, 144 Fed. 605, 608, 75 C. C. A. 407, 11 L. R. A. (N. S.) 1041; Teis v. Smuggler Mining Co., 158 Fed. 260, 85 C. C. A. 478, 15 L. R. A. (N. S.) 893; Armour & Co. v. Harcrow, 217 Fed. 224, 227, 133 C. C. A. 218, 221; Davidson v. Nichols, 11 Allen (Mass.) 514; McDonald v. Snelling, 14 Allen (Mass.) 290, 92 Am. Dec. 768; Burt v. Advertiser Newspaper Co., 154 Mass. 238, 28 N. E. 1, 13 L. R. A. 97; Bierer v. Hurst, 155 Pa. 523, 26 Atl. 742; Siewerssen v. Harris County, 41 Tex. Civ. App. 115, 91 S. W. 333.

Was it the duty of these defendants in 1891 to foresee that in 1909 or 1910 a levee board, not then in existence, would build such levees as is alleged in the complaint? Clearly not.

The demurrer to the complaint of all the defendants is sustained.