BUREL *v.* HUTSON.

Opinion delivered June 23, 1924.

1. LIMITATION OF ACTIONS—OBSTRUCTION OF FLOW OF WATER.—In an action for damages caused by a levee, whether the levee was a permanent structure of such nature that damage caused thereby must necessarily result, so that a cause of action arose on completion of the levee, *held* for the jury under the evidence.

2. WATERS AND WATERCOURSES—FLOODING BY LEVEE—JURY QUESTION. —Whether a landowner was entitled to recover for damages from flooding caused by a levee, *held* properly submitted to the jury under correct instructions.

Appeal from Lawrence Circuit Court, Eastern District; *Dene H. Coleman,* Judge; affirmed.

*W. E. Beloate,* for appellant.

The levee complained of was a permanent obstruction, and the action was barred by the three-year statute of limitations. 92 Ark. 406, 412; 107 Ark. 335; 136 U. S. 403; 22 A. & E. Enc. 698; Anderson, Law Dictionary, 769; 157 Ark. 125. The measure of damages is the difference between the value of the land as it would have been with the ditch open and the value of it with the ditch closed. 35 Ark. 622; 62 Ark. 360.

*Smith & Gibson* and *Cunningham & Cunningham,* for appellee.

Under the evidence the jury would not have been warranted in finding that the levee was a permanent obstruction. As to the right to recover, see 95 Ark. 299. The rule there stated was limited to some extent in the case of *Baker* v. *Allen,* 66 Ark. 273, in holding that the lower owner would only be liable when he unnecessarily

injures the upper proprietor by erecting a levee when, by reasonable care and expense, he could have avoided it; but this limitation was met by proof, uncontradicted, that appellant could have enlarged her ditch so as to carry off the water, at an expense of about twenty-five dollars, without building the levee.

WOOD, J. This is an action by C. C. Hutson against Lizzie Burel, to recover damages growing out of the alleged construction of a levee. Hutson alleged that he is the owner of a tract of land in Lawrence County, Arkansas, and that Lizzie Burel is the owner of a tract lying immediately south; that there is a low place or draw across his land which comes down from the lands lying north of it and passes on across the lands of the defendant, Lizzie Burel; that, in the year 1920, the defendant, Lizzie Burel, caused a levee to be built along the north side of her land across the draw or drain, which stopped the flow of the surface water in its natural channel and threw same back upon the lands of the plaintiff, to his damage in the sum of $200; that, in the year 1921, the defendant also caused the levee to be maintained, to the plaintiff's damage in the sum of $250, and that the same occurred in 1922, to plaintiff's damage in the sum of $300. The damage to the plaintiff caused by the defendant in the building of the levee as alleged was by reason of the overflow of back-water over the plaintiff's land and cotton crop.

The defendant, in her answer, denied all the material allegations of the complaint. She alleged that there was a small pond on the north end of her land, entirely cut off from the lands of the plaintiff by the county road and ditch, which ran east and west on her north line; that on the north side of the road was a ditch cut by plaintiff and paid for out of the funds of Lawrence County, running to the right-of-way of the Frisco Railroad lands, much lower than any part of defendant's land, which point was the natural drain both for her lands and those north of hers, but, at low water, the road prevented the water from getting to the ditch; that, in order to better

drain her small pond and keep her lands free from high water overflow when the water would run over the road and fill the low spot on her land, she, in 1909, placed a levee on her own land across the natural outlet of the water from her land; that some one, in 1920, 1921 and 1922, unknown to her, cut her levee, which she had maintained since 1909, and, upon discovering the same, she had the same rebuilt as it had been since 1909. She alleged that, since the construction of this levee, she had maintained the same as a permanent obstruction, and she therefore set up the three and seven-year statutes of limitation as a bar to the plaintiff's action.

The plaintiff testified that he owned the land as alleged in his complaint, and that the defendant owned the land lying south and adjoining his land. There was a low drain which ran through his land and down through the land of the defendant in a southeast course, and went out at the southeast corner of her field into Coon Creek ditch. The water, if not interfered with at all, would go down and drain on through into Coon Creek ditch. Defendant built the levee all the way from twelve inches to two feet high, and it holds the water up in the public road and backs it on the plaintiff's land. She has a ditch inside of her field up at the head of the levee. It would cost the defendant $25 to make a ditch that would drain off all the water. The levee was first put there nine or ten years ago. It had been washed down and rebuilt at different times—had been repaired from one to three or four times a year; that the levee is on the top of the ground. It is very easily and cheaply moved. If it had not been repaired from year to year it would have washed away, because the force of the water washes it out. When the big heavy rain comes, it overflows the top of it, and sometimes works through it and washes the levee out. The levee was all the way from a foot to two feet thick at the top and from a foot to two feet high.

There was testimony tending to show that the levee was from fifty to sixty feet long, and several witnesses corroborated the testimony of the plaintiff as to the

southeast course of the drainage from the lands of plaintiff on and across the lands of defendant. One witness testified that the levee had been maintained all the time since it had been built, except casual breakage, when it would be rebuilt. One witness testified that, if the levee was left alone, the high water would wash it away, and the main bulk of the water would go into Coon Creek. There was testimony to the effect that plaintiff put a culvert across the road which runs between the plaintiff's and defendant's lands; that the high water had washed a ditch across the road, and plaintiff put the culvert in running across the road. The road ditch was about eighteen inches lower than the top of the road, and the water had to go over that eighteen-inch ditch and over the road before it gets into defendant's land. The levee is across the road from plaintiff's land. It is fifteen or twenty steps long, or longer, and something like knee-high. The present rains run across the road. The water will go down the road ditch if it is open. The ditch is six inches lower than the road.

One witness stated that the culvert had to be put across the road; that the water could not get off any other way; that the road in some places was three feet higher than the ditch, and the ditch did not carry the water off. If there was no ditch on defendant's side, the high water would go off. It takes high water to get over the road and ditch to get into defendant's land.

The defendant testified that the levee was built in 1910. Prior to that time the water stood in her field, covering twenty-five acres or more. It had no outlet. Other parties would not let her clean out the ditch she had made across her lands to theirs, so she, last year, lost twenty-five acres of crop by water standing on her land. She had had no work done on the levee, except when some one would cut it, and she would have it refilled. She had never heard of the levee washing away. The road is about a foot higher than the land. In high water the water would have to run over the road to get to her land. She did not think there was any water on plain-

tiff's land caused by her levee. There was a good ditch on the north side of the road between her land and plaintiff's, and if they would keep that cleaned out it would take the water down to the railroad.

One of the witnesses for the defendant testified that the levee was just as it had been since he had owned the land. It was cut last spring, because the field ditch was not sufficient to take off the water. If the ditch was not there, the water would stay there. The defendant's field had to take care of the water that runs in there. The levee keeps it from running into the field. If it were not for the levee, the water that ran into the field would not run out. It would have to stay there and dry up. The road ditch and road do not cause any water to stand on plaintiff's land. During ordinary rains the water goes down the ditch between the public highway and Hutson's farm into the Frisco ditch. When big rains come the water backs up over plaintiff's land before it goes across the road to the levee.

One witness testified that this road is higher than Hutson's field, some three or four feet. When the water is standing in Hutson's field, the road is higher than the water. The road keeps it on Hutson's field, and not the levee of defendant. The levee is about as high as the road. There was other testimony to the same effect, corroborating the testimony of the defendant.

The court, after defining the issues, told the jury that the burden was on the plaintiff to prove by a preponderance of the evidence that the levee built by the defendant was the cause of his damage as alleged; that, if they so found, and further that the levee was not a permanent structure, they should find for the plaintiff in such amount as the evidence showed he was entitled to for the loss of his crop, less the expense he would have been put to in making and gathering a full crop.

In its instruction No. 3 the court told the jury, in effect, that, if the defendant caused the levee to be built in such manner as to cause damage to the plaintiff, when,

by reasonable care and expense, she could have avoided such injury, the verdict should be for the plaintiff.

In instruction No. 4 the court told the jury, in effect, that the defendant would not be liable for any damages that might have been caused by the construction of the road or the ditch on the north side of the road; that her responsibility rested solely on whether or not the levee which she erected was the cause of the damage.

In instruction No. 5 the court, in effect, told the jury that, if the defendant constructed the levee, and it was the cause of the overflow, yet if the levee was a permanent structure, that is, such an obstruction as would have continued except for the interference of man, then their verdict should be for the defendant.

In instruction No. 6 the court told the jury that the burden was on the defendant to prove that the levee was a permanent structure in order to entitle her to the bar of the three-year statute of limitation, and further, that it is only where a landowner obstructs the natural flow of surface water unnecessarily, when, by reasonable care and expense, he might have avoided such an injury, that he becomes liable to the upper proprietor for damages caused by the obstruction.

The jury returned a verdict in the sum of $150 in favor of the plaintiff. The court rendered judgment in his favor for that sum, from which is this appeal.

1. The principal contention of the appellant is that the levee is a permanent structure, of such nature that the damage caused thereby must necessarily result, and the certainty, nature and extent of the damage could be reasonably ascertained at the time of its construction, and therefore that the cause of action arose on the completion of the levee. To sustain this contention the appellant cites the cases of *Chicago, R. I. & Pac. Ry. Co.* v. *Humphreys,* 107 Ark. 330, and *St. Francis Levee Dist.* v. *Barton,* 92 Ark. 406. In the case of *Levee District* v. *Barton, supra,* the district constructed a solid embankment across certain lakes and bayous, thereby obstruct-

ing the lakes so as to cause the water to be impounded, overflowing lands cultivated by the plaintiff. Among other things, we there said, at page 410: "So, in this case, the obstruction of the ditch was permanent; that is, it will continue without change from any cause except human labor. The effect of it was to restore the land drained to the condition in which it was before the ditch was dug. Its present and future effect upon the land could be ascertained with reasonable certainty."

In the case of *Chicago, R. I. & P. Ry. Co.* v. *Humphreys, supra,* the railway built a railroad across a creek, with a culvert for the passage of the water, about eight feet high and thirteen feet long. Mrs. Humphreys occupied a house on certain lots across which the creek ran. She was damaged by an overflow, and alleged in her action for damages against the railroad company that the damage was caused by the negligent construction of the culvert by not making it large enough for the natural flow of the water. In that case the undisputed evidence showed that the culvert was insufficient from the time of its construction; that everybody in the neighborhood knew that, after the culvert was constructed, every big rain resulted in an overflow of the house in which Mrs. Humphreys lived.

In the above cases we held that, under the state of facts presented, the statute of limitations barred the action. In the case of *Chicago, R. I. & P. Ry. Co.* v. *Humphreys, .supra,* we said: "Indeed, the question cannot arise unless the obstruction is of a permanent nature, but its permanency does not of itself determine whether the damages which result from its erection are original or recurring. If it is of such a construction as that damage must necessarily result, and the certainty, nature and extent of this damage may reasonably be ascertained and estimated at the time of its construction, then the damage is original, and there can be but a single recovery, and the statute of limitation against such cause of action is set in motion on the completion of the obstruction. If it is known

merely that damage is probable, or that, even though some damage is certain, the nature and the extent of that damage cannot be reasonably known and fairly estimated, but would be only speculative and conjectural, then the statute of limitation is not set in motion until the injury occurs, and there may be as many successive recoveries as there are injuries. There are many cases in our reports on this subject, and their difficulty consists in the application of the law to the facts of each case.'' (Then follows citation of numerous cases of this court on the subject).

The facts of the case at bar readily differentiate it from the facts of the above cases. In the above cases the obstructions were in and of themselves permanent. They would continue without change from any cause except human labor, but here the levee was of such an insubstantial character that the high waters would wash it away, and it had to be repaired from one to three or four times each year. The levee was not a permanent obstruction; it was subject to be washed away by the big rains. The construction of the ditch and road, taken in connection with the construction of the levee, was such that the nature and extent of the damage could not have been reasonably known and fairly estimated at the time the levee was built, but the amount of such damage would be only speculative and conjectural. At least there was testimony to warrant such inferences and to justify the court in submitting the issue of the statute of limitation to the jury, which it did under correct instructions.

2. As to whether or not the appellee was entitled to recover, was also submitted to the jury under correct instructions. See *Baker* v. *Allen,* 66 Ark. 273; *St. Louis S. W. Ry. Co.* v. *Mackey,* 95 Ark. 299; also *Morrow* v. *Merrick,* 157 Ark. 618.

We find no error in the judgment of the trial court. It must therefore be affirmed.